EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION and
Jean Black, Plaintiffs,

and

Carolyn Penny Lewis and Joyce Gitch,
Plaintiffs–Intervenors,

v.

AMERICAN HOME PRODUCTS COR-
PORATION d/b/a Fort Dodge Ani-
mal Health, Defendant.

No. C 00–3079–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Sept. 13, 2001.

Jean P. Kamp, Regional Attorney, Deborah J. Powers, Senior Trial Attorney, E.E.O.C. Milwaukee Dist. Office, Milwaukee, WI, for E.E.O.C.

Jeane W. Pearson, Price & Pearson, Fort Dodge, IA, for Joyce Gitch.

Neven J. Mulholland, Johnson, Erb, Bice, Kramer, Good & Mulholland, P.C., Fort Dodge, IA, Mark S. Dichter, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for American Home Products.

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS TO RECONSIDER ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND REGARDING PLAINTIFF–INTERVENOR GITCH'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST AFFIRMATIVE DEFENSE

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. *INTRODUCTION* .................................................889

II. *LEGAL ANALYSIS* ...............................................891
 A. *Power To Reconsider Order Granting Partial Summary Judgment* ..........891
 B. *Reconsideration Of The June 13, 2001, Order* .............................892
 1. *Portions of the order pertaining to Gitch's release* .....................892
 a. *Foreclosure of Gitch's opportunity for a full resistance* ..............892
 b. *Can Gitch generate a fact dispute on the validity of her release?* .....896
 c. *The EEOC's claims on Gitch's behalf* ..............................900

2. *Portions of the order pertaining to Wood's release* ...................... 902
 a. *Scope of Wood's release* ........................................ 902
 b. *What claims are precluded?* ..................................... 905
 i. *Claims by the EEOC* ......................................... 905
 ii. *Claims by Wood* ............................................ 914

III. *CONCLUSION* ..................................................... 916

On June 13, 2001, this court entered an order denying plaintiff EEOC's motion for a continuance pursuant to Rule 56(f) and granting the motion for partial summary judgment filed by defendant American Home Products Corporation (AHP). As a consequence of that order, the parties have filed a variety of motions, including motions to alter or amend the June 13, 2001, order itself, motions to alter or amend related orders, and a motion for partial summary judgment on one of the issues apparently resolved by the June 13, 2001, order, the validity of a release signed by one of the plaintiff-intervenors. The various motions spawned by the court's June 13, 2001, order are now before the court.

## I. INTRODUCTION

In this action, filed on September 29, 2000, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, the EEOC seeks "to correct" unlawful sexual harassment and retaliation by defendant AHP and "to make whole" five individuals who have allegedly suffered from unlawful employment practices.[1] On December 6, 2000, AHP moved to dismiss the EEOC's complaint as to claims for relief for Craig Wood and Joyce Gitch, on the ground that these two individuals have released AHP from all of their individual claims for relief, in return for severance packages, so that the EEOC cannot now recover on their claims on their behalf. The EEOC and the intervening plaintiffs separately resisted the motion to dismiss. The EEOC incorporated into its resistance an assertion that the motion to dismiss should be "converted" into a motion for summary judgment and, further, that discovery should be permitted pursuant to Rule 56(f) before the court ruled on AHP's dispositive motion as a motion for partial summary judgment. By order dated April 4, 2001, the court formally "converted" AHP's dispositive motion into a motion for partial summary judgment, but the court found that the EEOC's first Rule 56(f) motion failed to satisfy the pertinent requirements for a continuance to pursue discovery. *See EEOC v. American Home Prods. Corp.,* 199 F.R.D. 620, 632–33 (N.D.Iowa 2001) (*American Home Products I* ). Nevertheless, the court gave the EEOC the opportunity to reassert a motion for a Rule 56(f) continuance in light of the court's formal "conversion" of AHP's motion, an opportunity of which the EEOC availed itself on April 18, 2001. The intervening plaintiffs, however, did not join in the EEOC's reasserted Rule 56(f) motion, file their own Rule 56(f) motion, or supplement their resistance to AHP's motion to dismiss in light of conversion of AHP's motion into a motion for partial summary judgment.

By order dated June 13, 2001, the court found that the EEOC's reasserted Rule 56(f) motion was also deficient, in that it did not identify discovery that would gen-

---

1. The EEOC filed a First Amended Complaint on April 11, 2001, which adds a class action allegation on behalf of "a class of female employees who have been aggrieved by [unlawful employment practices on the basis of sex harassment]." First Amended Complaint, "Nature Of The Action," unnumbered first paragraph.

erate genuine issues of material fact as to the validity of the releases signed by Wood and Gitch. *See EEOC v. American Home Prods. Corp.*, 144 F.Supp.2d 1084 (N.D.Iowa 2001) (*American Home Products II*). The court concluded further that, because the EEOC's Rule 56(f) motion was inadequate, and the EEOC consequently could not generate any genuine issue of material fact on the invalidity of Gitch's and Wood's releases, AHP was entitled to partial summary judgment to the effect that the EEOC could not assert claims on behalf of those two individuals. A flurry of motions and related orders followed this ruling.

First, on June 18, 2001, Craig Wood, who had moved to intervene in this action but had not yet been granted leave to do so, filed a Rule 59(e) Motion To Alter Or Amend Order And Motion For Stay, in which he asserted that the June 13, 2001, order improperly prevented him from pursuing claims in this litigation that arose after the date of his release. However, as a direct consequence of the June 13, 2001, order, on June 19, 2001, a magistrate judge of this court denied Craig Wood's motion for leave to intervene, concluding that, in light of the court's ruling, none of the claims in which Wood sought to intervene remained viable in this case. Then, on June 21, 2001, the court denied Wood's June 18, 2001, motion to alter or amend the court's June 13, 2001, order on AHP's motion for partial summary judgment on the ground that Wood, a non-party, did not have standing to seek reconsideration of the order.

On June 22, 2001, the first of the motions to alter or amend the court's June 13, 2001, order asserted by a person who was already a party to this action was filed. That motion to alter or amend was plaintiff-intervenor Joyce Gitch's Rule 59(e) Motion To Alter Or Amend Order. In her Rule 59(e) motion, Gitch contends that her due process rights were denied, because she had never been afforded a hearing on AHP's converted motion for partial summary judgment or the opportunity to present disputed facts through private counsel in order to demonstrate that her release was not valid. Instead, Gitch contends that, in finding that the EEOC could not generate genuine issues of material fact as to the validity of her release, even with further discovery, the court relied on her deficient and erroneous affidavit filed by the EEOC without her private counsel's prior review. Gitch argues that the affidavit filed by the EEOC failed to address her alcoholism, mental illness, and duress at the time she signed the purported release of her claims against AHP.

On June 27, 2001, the EEOC also filed a Rule 59(e) Motion To Amend Judgment. However, the EEOC did not attack the court's conclusion that the releases were valid. Rather, the EEOC asserted that the court's June 13, 2001, order was ambiguous as to whether the EEOC may pursue causes of action on behalf of Wood and Gitch that arose after they executed their releases. The EEOC contends that the June 13, 2001, order should be clarified to permit the EEOC to pursue such post-release claims in order to avoid a manifest injustice.

On June 28, 2001, Gitch and "class member" Wood filed a Rule 59(e) Motion To Alter Or Amend Orders Denying Wood's Intervention. Gitch and Wood assert that the court must reconsider its orders denying Wood leave to intervene, because the court failed to recognize the "exception" to Wood's release, which would permit him to intervene to assert post-release civil rights and tort claims.

On July 5, 2001, Gitch launched a renewed attack on the validity of her release, notwithstanding the court's conclusion in

the June 13, 2001, order that the release barred the EEOC's claims on her behalf. Gitch's attack is in the form of a motion for partial summary judgment on, and consequently to strike, AHP's first affirmative defense to her complaint in intervention, in which AHP asserts Gitch's release as a defense to her individual claims. In support of her motion for partial summary judgment on AHP's "release" defense, Gitch submits what appears to be the evidence that she argues she was precluded from submitting in resistance to AHP's "converted" motion to dismiss. That evidence consists of her affidavit and corroborating evidence that she was abusing alcohol at the time she signed the purported release of her claims against AHP, that she did not comprehend the effect of the release, and that representatives of AHP knew she was suffering from alcohol abuse at the time.

On July 6, 2001, AHP reentered the fray by asserting a motion to reconsider Gitch's intervention. AHP contends that, in light of the court's June 13, 2001, order holding that Gitch validly released her claims, none of the claims on which Gitch was allowed to intervene remain viable in this action.

Each of these motions was resisted by the opposing party or parties. Moreover, on August 30, 2001, the court heard oral arguments on these motions. At the oral arguments, plaintiff EEOC was represented by Jean P. Kamp, Regional Attorney, and Deborah J. Powers, Senior Trial Attorney, from the EEOC's Milwaukee District Office in Milwaukee, Wisconsin. Plaintiff-intervenor Joyce Gitch was represented by Jeane W. Pearson of Price & Pearson in Fort Dodge, Iowa. Defendant American Home Products was represented by Neven J. Mulholland of Johnson, Erb, Bice, Kramer, Good & Mulholland, P.C., in Fort Dodge, Iowa, and Mark S. Dichter of Morgan, Lewis & Bockius, L.L.P., in Philadelphia, Pennsylvania.

## II. LEGAL ANALYSIS

### A. Power To Reconsider Order Granting Partial Summary Judgment

Before addressing any of the motions to reconsider the court's June 13, 2001, order or related rulings, the court must first consider AHP's contention that the opposing parties' motions to alter, amend, or reconsider should be denied, because there is no authority under the Federal Rules of Civil Procedure for the court to reconsider a ruling granting a motion for partial summary judgment. In AHP's Memorandum Of Law In Support Of Its Opposition To The Rule 59(e) Motions Of Craig Wood And Plaintiff–Intervenor Joyce Gitch And In Support Of Defendant's Motion For Reconsideration Of The Court's Order Granting Gitch's Intervention (AHP's Brief Regarding Intervenors), AHP asserts that this court's June 13, 2001, order does not resolve all of the claims of the EEOC and does not address damages or injunctive relief, and so is not "final." Consequently, AHP asserts that the Federal Rules of Civil Procedure " 'do not seem to provide any basis for [a] motion to reconsider this court's grant of partial summary judgment,' " quoting this court's decision in *Laird v. Stilwill*, 982 F.Supp. 1345 (N.D.Iowa 1997). *See* AHP's Brief Regarding Intervenors at 8 (quoting *Laird*, 982 F.Supp. at 1353–54).

█ AHP provides only a truncated statement of this court's conclusions in the *Laird* decision, however. In *Laird*, the decision continues as follows:

This is not to say that the federal defendant could not somehow move to reconsider the order granting partial summary judgment. Indeed, the result

of a determination that Rule 59(e) and Rule 60(b) are inapplicable to the present motion to reconsider a grant of partial summary judgment actually means that the court has *more,* not less, discretion to alter or amend the ruling. Under Rule 59(e), the court may alter or amend its judgment only if it finds a "manifest" error of law or fact in its ruling. *See Hagerman v. Yukon Energy Corp.,* 839 F.2d 407, 414 (8th Cir.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.), as amended, 835 F.2d 710 (7th Cir.1987), quoting in turn *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988); *see also Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir.1992) (purpose of a motion to alter or amend a judgment under Rule 59(e) "is to correct manifest errors of law or to present newly discovered evidence."). Similarly, Rule 60(b) only provides for relief in specific enumerated circumstances. FED. R. CIV. P. 60(b).

The situation is different when a party moves to reconsider a grant of partial summary judgment, as the Seventh Circuit Court of Appeals also explained in *Deimer [v. Cincinnati Sub–Zero Prods., Inc.,* 990 F.2d 342 (7th Cir.1993) ]:

> [A] district court's "partial summary judgment" [is] not subject to the strictures of Rule 59(e), and the district court retain[s] the power to deal with any aspect of the lawsuit until its termination by the entry of a final and appealable judgment. See 10A CHARLES A. WRIGHT, ET AL.[ARTHUR R. MILLER & MARY KAY KANE], FEDERAL PRACTICE AND PROCEDURE § 2737, at 455–56 (2d ed.1983); *see also Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197, 200 (7th Cir.1983).... While [the movant's] tardiness in submitting her motion for reconsideration [pursuant to Rule 59(e) ] and the accompanying clarification was a valid consideration for the district court to weigh in its determination of the matter, its misapprehension of the procedural context in which it ruled resulted in its adopting a far more restrictive view of its discretion than was necessary.

*Deimer,* 990 F.2d at 346 (emphasis added). *Thus, the court's discretion to alter or amend its grant of partial summary judgment is actually broader than would be its power to alter or amend a final judgment pursuant to either Rule 59(e) or Rule 60(b), because the court retains the discretion to alter or amend such a non-final, non-appealable interlocutory order. Id.*

*Laird,* 982 F.Supp. at 1354–55 (first emphasis in the original; second emphasis added). As in *Laird,* the lack of any authority for reconsideration in Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure presents no impediment to reconsideration of the June 13, 2001, order in this case. Rather, the court has broad discretion to undertake such reconsideration. *Id.*

### B. Reconsideration Of The June 13, 2001, Order

#### 1. Portions of the order pertaining to Gitch's release

##### a. Foreclosure of Gitch's opportunity for a full resistance

The court finds that the most profitable way to approach the various motions to reconsider the June 13, 2001, order and related orders in this case is to begin with plaintiff-intervenor Gitch's contention that she was improperly foreclosed from sup-

plementing her resistance to AHP's motion and denied a hearing regarding the validity of her release after the court "converted" AHP's motion into a motion for partial summary judgment. Gitch argues that, had she been afforded such opportunities to supplement her own resistance to AHP's motion, she could have generated genuine issues of material fact as to the invalidity of her release by pointing to evidence that she was suffering from alcoholism and was too drunk at the time she signed the release to comprehend what she was doing. She points out that the EEOC failed to assert such an argument or point to pertinent evidence in support of it.

The court acknowledges AHP's argument that the EEOC had a full and fair opportunity to litigate the invalidity of Gitch's release on Gitch's behalf, and failed to present the evidence on which Gitch now relies. The court notes further that Gitch submitted her own separate resistance to AHP's original motion to dismiss, but did not assert in that resistance that either her alcoholism or her drunkenness at the time she signed her release undermined the "knowingness" or "voluntariness" of her release. Rather, Gitch's separate resistance to the portion of the "unconverted" motion asserting that she had released her claims relied entirely on Gitch's contention that, "[d]ue to [AHP's attorney] Anderson's relationship with Gitch, the validity of the Gitch release is presumptively invalid." Plaintiff–Intervenors' Memorandum In Opposition To Defendants' Motion For Partial Dismissal Of Plaintiffs' Complaint, 5. Although there are some references to concerns that Gitch was not comprehending the meaning and effect of her termination, severance, or release in Gitch's initial resistance, *see id.* at 4–5 (penultimate paragraph of statement of "facts"), none of these references or the cited portions of the record on which they rely indicate that Gitch's lack of understanding had anything to do with alcohol abuse. Moreover, some of the evidence upon which Gitch now relies as corroborating her alcohol abuse at the pertinent time was available to Gitch's attorney in the fall of 2000, several months prior to the filing of her resistance to AHP's "unconverted" motion to dismiss. *See* Plaintiff–Intervenor Joyce Gitch's Memorandum In Support Of Motion For Partial Summary Judgment Striking First Affirmative Defense, Exhibit 3 (Deposition of Jean Black, October 3, 2000). Thus, the omission of alcohol abuse as a challenge to the validity of Gitch's release smacks of a strategic decision, not foreclosure by the court of the opportunity to assert such a challenge.

In the April 4, 2001, order that Gitch contends led to the denial of her opportunity to file a separate resistance to AHP's "converted" motion, the court gave the EEOC until April 18, 2001, to reassert its motion for a Rule 56(f) continuance and established the following contingent deadlines:

> 3. **If a Rule 56(f) motion is filed by the deadline of April 18, 2001, [AHP]** shall have **to and including May 2, 2001,** within which to resist that motion. The court will thereafter rule on the motion for a continuance and, *if necessary,* establish a schedule for discovery, further briefing, or supplementation of [AHP's] Motion for Partial Dismissal and resistances thereto in light of the conversion of the motion to one for summary judgment.
>
> 4. **If no Rule 56(f) motion is filed by April 18, 2001,** or if prior to that date, the EEOC files with the court and serves upon all parties a written notice that it will not be filing such a motion for a continuance, the parties shall have **to and including May 2, 2001, within which to supplement the Motion for**

**Partial Dismissal and the resistance thereto,** if appropriate, in light of the conversion of the Motion for Partial Dismissal into a motion for summary judgment.

*American Home Prods. I,* 199 F.R.D. at 633 (emphasis in bold in the original; emphasis in italics added). Gitch argued in her Rule 59(e) motion and during oral arguments on August 30, 2001, that she "expected" a hearing on AHP's "converted" motion at some point after April 18, 2001. She also argued that she "followed" the scheduling portion of the April 4, 2001, order by not submitting any supplemental materials in response to "conversion" of AHP's motion, because the April 4, 2001, order made no provision for her to submit such materials.

As the court pointed out at oral arguments, the April 4, 2001, order established certain deadlines *for the EEOC and AHP,* in the event the EEOC did or did not reassert a Rule 56(f) motion. It says nothing that precluded Gitch from responding to the "conversion" of AHP's motion. Therefore, in response to "conversion" of AHP's motion, Gitch was free to do any of the following things: (1) to join in the EEOC's Rule 56(f) motion; (2) to assert her own Rule 56(f) motion; (3) to submit a supplemental resistance within the time provided under the local rules for resisting a motion for summary judgment; or (4) to file a motion requesting clarification of her deadline for submission of materials in resistance to the "converted" motion, if she was convinced that the order was ambiguous or improperly foreclosed her from submitting her separate resistance to the "converted" motion. Gitch did none of these things. Also, although Gitch contends that the court "ignored" her original resistance, when it denied the EEOC's reasserted Rule 56(f) motion and granted AHP's motion for partial dismissal, the court did no such thing. Rather, the court simply found Gitch's original resistance, like the EEOC's original resistance, insufficient to defeat AHP's original motion. Thus, Gitch appears to be attempting to assert "new" arguments when her original arguments failed to persuade the court to deny AHP's motion asserting the validity of her release. "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim," in the context of motions to reconsider, alter, or amend orders regarding summary judgment, or orders denying motions to amend pleadings after summary judgment has been granted, particularly where the evidence upon which the argument for reconsideration relies was known to the moving party prior to the dispositive ruling. *See Briddle v. Scott,* 63 F.3d 364, 380–81 (5th Cir.1995) (citations and internal quotation marks omitted).

 Gitch must bear substantial responsibility for not submitting the evidence and arguments regarding her alcoholism and drunkenness—which she contends establishes, or at least generates genuine issues of material fact as to, the invalidity of her release—prior to the court's June 13, 2001, order upholding the validity of her release. However, even though the April 4, 2001, order indicates that a schedule for discovery and further briefing or supplementation would only be established "if necessary"—that is, upon the EEOC's timely reassertion of an adequate Rule 56(f) motion—the order does not plainly indicate any deadlines for *Gitch* to supplement her separate resistance to AHP's motion or otherwise to respond to "conversion" of AHP's motion. Although Gitch could, perhaps, have remedied any resulting ambiguity herself by requesting clarification, the court must accept responsibility for the ambiguity of its order and recognize that, under the cir-

cumstances, the court's entry of partial summary judgment on June 13, 2001, may have been premature, in the sense that Gitch had not been fully heard on her separate resistance to AHP's "converted" motion for partial summary judgment.[2]

■ Although mindful of, and sympathetic to, AHP's argument that Gitch is seeking a second, or perhaps third, bite at the apple, in the exercise of the court's broad discretion to reconsider an order granting partial summary judgment, see *Laird*, 982 F.Supp. at 1354–55, the court concludes that the remedy for possible premature disposition of AHP's "converted" motion for partial summary judgment is to consider whether Gitch can now establish, or at least generate a genuine issue of material fact as to, the invalidity of her release. This the court can do by addressing Gitch's own motion for partial summary judgment on AHP's "release" defense. If Gitch can neither prevail on her motion for partial summary judgment on AHP's "release" defense nor generate a genuine issue of material fact as to the invalidity of her release, the motions to reconsider that part of the June 13, 2001, order upholding the validity of Gitch's release will be mooted.[3] On the other hand, if Gitch *can* prevail on her motion for partial summary judgment or can now generate the necessary genuine issue of material fact to defeat AHP's "converted" motion, her motions to reconsider and for partial summary judgment will be largely or completely resolved and AHP's motion to reconsider Gitch's intervention will be defeated. Any "prejudice" to AHP in revisiting the validity of Gitch's release is not really pertinent, or certainly not dispositive of the question, where the court's possibly premature ruling may have deprived Gitch of the opportunity for full and fair consideration of the validity of her release. Nor is it persuasive to argue that Gitch has already been provided with a full and

**2.** Under ordinary circumstances, one plaintiff may not have standing to resist a motion for summary judgment directed solely at the claims of *another* plaintiff. However, in this case, in light of the potentially preclusive effect upon Gitch's own claims of a ruling on the validity of Gitch's release with regard to the EEOC's claims on her behalf, the court believes that Gitch had standing to mount her own resistance to AHP's motion. Moreover, Gitch has a statutory right to intervene in this action, *see* 42 U.S.C. § 2000e–5(f)(1) ("The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission."), which presumably includes the right to challenge defenses to the EEOC's claims that also have an impact on her individual claims. Gitch complains that AHP is trying to make piecemeal attacks on the claims of the plaintiffs by mounting its initial attack on the validity of the releases only against the EEOC, then using the ruling on that motion to attack her individual claims, and even her intervention in the lawsuit. However, the short answer to that complaint is that, at the time AHP filed its motion to dismiss, only the claims of the EEOC were properly before the court, where Gitch had only moved for, but not yet been granted, leave to intervene. Thus, AHP is no more guilty of "serial" attacks on claims by or on behalf of Gitch on the basis of her release than Gitch is guilty of serial presentation of theories for invalidating her release. Furthermore, where Gitch took it upon herself to resist AHP's motion to dismiss the EEOC's claims on her behalf, any potential prejudice from AHP's failure to assert its motion against her complaint in intervention as well as against the EEOC's complaint would have been ameliorated, had Gitch been given a full and fair opportunity to mount a separate resistance to AHP's "converted" motion.

**3.** If the court again finds that there is no genuine issue of material fact that Gitch's release is valid, the court will still be required to consider whether it must clarify the extent to which Gitch's release bars her own claims or the claims brought on her behalf by the EEOC, as the plaintiffs argue in their motions to alter or amend.

fair hearing on the question of the validity of her release through the EEOC's litigation of the question, where Gitch has a statutory right to intervene in the EEOC's action to protect her own interests. *See* 42 U.S.C. § 2000e–5(f)(1) ("The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission."); *EEOC v. Waffle House, Inc.*, 193 F.3d 805, 810 (4th Cir.1999) ("[E]ven when the EEOC has determined to bring suit in its own name, the charging party retains 'the right to intervene in a civil action brought by the Commission' if the individual believes that the EEOC will not adequately represent his interests as it pursues its public objectives. *See* 42 U.S.C. § 2000e–5(f)(1)."). The court will therefore "reconsider" its ruling that Gitch's release is valid by considering Gitch's motion for partial summary judgment on AHP's "release" defense.

### b. Can Gitch generate a fact dispute on the validity of her release?

■ In her motion for partial summary judgment on AHP's "release" defense, Gitch contends, on the basis of her latest affidavit and supporting deposition transcripts of coworkers, that she was abusing alcohol from mid-January 1999 until she was hospitalized in late March 1999, and that AHP's Vice Presidents, Chet Shubert and David Hanlon, knew of her substance abuse. More specifically, she avers in her latest affidavit and statement of materials facts that she consumed at least a fifth of whiskey daily at work and after work in the days preceding her signing of her release and that, at the time she signed the release, she was intoxicated and did not comprehend the effect of the release or the terms of settlement. At the time she signed the release, Gitch also contends that she believed that suicide was her only

other option. She therefore signed the release believing that she had to sign the papers given to her by Chet Shubert in order to receive her pay and to secure insurance for her family. Moreover, Gitch contends that her alcoholism and intoxication prevented her from revoking the release within the time allowed. Gitch also points out that Chet Shubert did not direct or require her to obtain counseling or help for her condition before terminating her, but had required David Hanlon to obtain counseling for his sex addiction before Hanlon was offered a severance package. She also points to evidence from her supervisor and coworkers corroborating her alcohol abuse during the pertinent period. Thus, she argues that her alcohol abuse and the defendant's knowledge of that alcohol abuse invalidate her release as a matter of law, because they establish that she did not give a voluntary and knowing release of claims. Gitch also reiterates her original argument that the conduct of Ann Anderson and other AHP employees indicates that she signed the release under duress.

AHP has not attempted to dispute Gitch's evidence concerning her alcohol abuse at the time she signed the release. Thus, AHP would seem to have failed its burden as the party resisting summary judgment under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324,

1325 (8th Cir.1995).[4] However, AHP does cite essentially "legal" grounds for deny-

**4.** The court has recounted the standards applicable to a motion for summary judgment in more detail in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards are as follows.

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990).

An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995); *Hartnagel,* 953 F.2d at 394.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the

ing Gitch's motion for summary judgment. First, AHP contends that the court should deny Gitch's motion for partial summary judgment without reaching the merits of her arguments, because the court's June 13, 2001, order renders moot the issues reasserted in Gitch's motion for partial summary judgment. This argument is a tautology in the context of companion motions for partial summary judgment and to reconsider the June 13, 2001, order, in the sense that AHP's argument asserts that the court shouldn't reconsider because it has already considered, when the question is precisely whether or not the court should reconsider. AHP also asserts as "legal" grounds for denying Gitch's motion for partial summary judgment that the EEOC has already had a full and fair opportunity to litigate the validity or invalidity of Gitch's release, an argument addressed above, and that Gitch made a strategic decision that unfairly delays disposition of her claims and unfairly burdens AHP and the court. While the court shares to some extent AHP's view that Gitch made a strategic decision not to assert in her initial response to AHP's "uncoverted" motion to dismiss the arguments she now presents in motions to reconsider and for partial summary judgment, the court reiterates that consideration of her arguments now is appropriate in light of the possibility that the court unfairly foreclosed her from raising these arguments and the evidence upon which they are based by prematurely granting partial summary judgment on the validity of Gitch's release. Although AHP requested in its initial resistance to Gitch's motion for partial summary judgment that the

court allow an extension of time for AHP to make a further resistance, if the court decided to reach the merits of Gitch's motion, the court is of the view that the time for AHP's full response was in its initial resistance. *See* Fed. R. Civ. P. 56; N.D. IA. L.R. 56.1. Thus, the court believes that AHP also made a strategic decision not to resist Gitch's motion for partial summary judgment on the factual merits of her contentions.

On August 28, 2001, the court received by facsimile AHP's Surreply In Support Of Its Resistance To The Motion For Partial Summary Judgment Striking First Affirmative Defense Of Plaintiff–Intervenor Joyce Gitch And Its Resistance To The Rule 59(e) Motions Of EEOC, Gitch, And Craig Wood (AHP's Surreply).[5] In that Surreply, AHP once again foregoes the opportunity to attempt to generate genuine issues of material fact that Gitch was not so impaired by alcohol abuse that her release of claims was not knowing and voluntary. Instead, AHP mounts a mixed legal and factual resistance, arguing that Gitch ignores Eighth Circuit precedent holding that " '[a] party trying to invalidate a release must show that *the other party's* wrongful acts caused him to be "bereft of the quality of mind essential to the making of a contract." ' " AHP's Surreply at 6 (quoting *American Home Products II*, 144 F.Supp.2d at 1094, in turn quoting *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir.1985)) (emphasis added by the court). The implication of this argument is at least partly factual: AHP contends that it is not responsible for Gitch's intoxication at the time she signed her release and, thus,

facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

**5.** In the course of its oral argument, the EEOC objected to consideration of AHP's

Surreply. However, the court advised the EEOC orally then, and now confirms, that it will consider AHP's Surreply, on the ground that the Surreply is appropriate in the context of the various motions now before the court.

AHP did nothing to "bereave" Gitch of the necessary quality of mind.

■ As this court indicated in *American Home Products II*, the rule stated in *Anselmo* arose in the context of a "discussion of whether a release of claims in return for severance benefits had been obtained by 'duress.'" *Id.* (citing *Anselmo*, 771 F.2d at 420). However, as this court also pointed out—agreeing with AHP on this point—"the Eighth Circuit Court of Appeals applies 'ordinary contract principles' to the question of the validity of a release." *Id.* at 1091 (citing, *inter alia*, *Ulvin v. Northwestern Nat'l Life Ins. Co.*, 943 F.2d 862, 866–67 (8th Cir.1991)). Under common-law contract principles, it is clear that "duress" is not the only defense to the validity of a contract. Rather, the grounds upon which a contract is voidable include fraud, duress, mental illness, intoxication, and infancy. *See, e.g.*, Restatement (Second) of Contracts §§ 7, cmt. b, 12, 15, 16 & cmt. c, & 85. In the context of the "*Leavitt* factors," which this court identified as pertinent to the determination of whether or not a release is valid, *see American Home Products II*, 144 F.Supp.2d at 1095–96 (citing *Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir.1990)),[6] evidence of Gitch's intoxication plainly implicates the "knowingness" and "voluntariness" of her release. This is so, because her intoxication generates genuine issues of material fact as to whether factors (5) (whether the plaintiff read and considered the terms of the release before signing it) and (6) (whether the plaintiff knew of her rights under the plan and the relevant facts) weigh sufficiently heavily against the validity of the release that the release cannot be upheld. *See id.*

Although AHP might contend that Gitch ratified her release, signed while she was intoxicated, by failing to revoke it within the time allowed, Gitch has also pointed to evidence that her subsequent alcohol abuse and hospitalization prevented her from timely revoking the release. AHP has not attempted to generate a genuine issue of material fact on the question of subsequent ratification any more than it has attempted to generate a genuine issue of material fact on the validity of the release notwithstanding Gitch's assertions that she was too intoxicated at the time to give a knowing and voluntary release of her claims arising from her termination.

However, Gitch's submissions do not require entry of summary judgment in her favor on AHP's affirmative defense that her release is valid. Rather, as indicated by the court's analysis of the "*Leavitt* factors" in the June 13, 2001, order—albeit in the absence of any indication of alcohol abuse by Gitch—the substantial submissions by AHP in support of its own motion to dismiss suggest that Gitch's release of claims was nonetheless knowing and voluntary. *See American Home Products II*, 144 F.Supp.2d at 1098–1101. Contrary to

---

6. These factors consist of the following: (1) [the plaintiff's] education and business experience; (2) [the plaintiff's] input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time [the plaintiff] had for deliberation before signing the release; (5) whether [the plaintiff] read the release and considered its terms before signing it; (6) whether [the plaintiff] knew of his rights under the plan and the relevant facts when he signed the release; (7) whether [the plaintiff] was given an opportunity to consult with an attorney before signing the release; (8) whether [the plaintiff] received adequate consideration for the release; and (9) whether [the plaintiff's] release was induced by improper conduct on [the fiduciary's] part.

*Leavitt*, 921 F.2d at 162 (citing G. Bogert & G. Bogert, The Law of Trusts and Trustees § 943, at 475–80 (rev.2d 3d.1982)).

Gitch's and Wood's contentions that the court "ignored" their submissions concerning the invalidity of their releases in its June 13, 2001, order, the court simply found their original submissions in support of their resistances to AHP's "unconverted" motion failed to generate a genuine issue of material fact that their releases were invalid. Gitch has now been afforded the opportunity to supplement her resistance to the "converted" motion, but her present submissions, in light of the record as a whole, do not establish that there are no genuine issues of material fact that her release was invalid and that she is consequently entitled to have AHP's "release" defense stricken. Rather, the court finds that the record presents a jury question on the validity of her release under the circumstances.

Therefore, upon reconsideration of its June 13, 2001, order in light of the parties' subsequent submissions, and in light of the court's broad discretion to reconsider a motion for partial summary judgment that is not fully dispositive of the case, *see Laird,* 982 F.Supp. at 1354–55, the court concludes that there is now a genuine issue of material fact as to whether or not Gitch's release was knowing and voluntary. Gitch's motion for partial summary judgment and to strike AHP's first affirmative defense will therefore be denied, but those portions of the June 13, 2001, order holding that Gitch's release was valid as a matter of law, and the consequences of that holding, are retracted. Thus, both Gitch and the EEOC may assert claims on Gitch's behalf, although they must also defeat AHP's affirmative defense that Gitch released such claims.

More specifically, the determination that there are genuine issues of material fact as to the validity of Gitch's release results in the complete or partial disposition of various of the pending motions, as follows: (1)

Gitch's June 22, 2001, Rule 59(e) motion regarding the June 13, 2001, order will be granted as indicated above; (2) portions of the EEOC's June 27, 2001, Rule 59(e) motion will be granted to the extent that the EEOC may assert claims on Gitch's behalf, although the court will revisit below what claims the EEOC actually asserts, or can assert, on Gitch's behalf; (3) Gitch's July 5, 2001, motion for partial summary judgment and to strike affirmative defense will be denied in its entirety; and (4) AHP's July 6, 2001, motion to reconsider Gitch's intervention will be denied in its entirety.

### c. The EEOC's claims on Gitch's behalf

Because the court is reinstating the EEOC's claims on Gitch's behalf, the court deems it appropriate to determine precisely what claims those might be. This determination is appropriate, not least because it is apparent that AHP and the EEOC disagree over whether or not the EEOC has asserted any "post-release" claims on Gitch's behalf. Thus, if AHP ultimately proves that Gitch validly released certain claims, the parties require guidance on whether or not the EEOC asserts any claims on Gitch's behalf that have *not* been released. Also, in its Rule 59(e) motion, the EEOC sought clarification of whether the court's order barred it from litigating "post-release" claims on Gitch's behalf, in light of the court's determination that Gitch's release was valid.

The EEOC contends that it is undisputed that Gitch's release does not release any "post-release" claims. AHP, on the other hand, contends that the EEOC has never asserted *any* post-release claims on Gitch's behalf, and cannot now do so, because its has not satisfied the statutory prerequisites, including investigation, conciliation, and administrative determination of such claims, to assert them in this law-

suit. The court finds that analysis of the scope of the EEOC's claims on Gitch's behalf should begin with a review of the claims that the EEOC has actually asserted in this lawsuit.

In the "Nature Of The Action" preamble to its original complaint, the EEOC asserted that "[t]his action is ... brought under Title VII and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to make whole ... Joyce Gitch ... who ha[s] been aggrieved by Defendant's unlawful employment practices." EEOC's Complaint, "Nature Of The Action," unnumbered first paragraph. The preamble adds an allegation that "[w]hen ... Gitch investigated and reported the sexual harassment [by Dave Hanlon] to Defendant, Defendant terminated [her] and, rather than taking disciplinary action against Hanlon, promoted him." *Id.* More specifically, the EEOC originally pleaded that Gitch had filed an administrative charge with the EEOC "alleging retaliation in violation of Title VII by Defendant." *Id.* at ¶ 6. The EEOC then alleged that AHP "retaliat[ed] against ... Gitch ... who investigated the allegations of sex harassment," *id.* at ¶ 7(a), further specifying the retaliatory conduct toward Gitch as "[t]erminating ... Gitch ... in retaliation for [her] participation in the investigation of sex harassment against Hanlon." *Id.* at ¶ 7(c). Thus, no conduct subsequent to Gitch's termination, retaliatory or otherwise, was alleged by the EEOC to be the subject of its original complaint. The EEOC's First Amended Complaint likewise identifies the claim on behalf of Gitch as "retaliation" and identifies the specifications of retaliation in the same way. *See* First Amended Complaint, "Nature Of The Action," unnumbered first paragraph; ¶¶ 6, 7(a) & 7(c). Thus, the EEOC has simply never asserted a claim on Gitch's behalf based on post-release conduct by AHP.

The EEOC contends, however, that its allegation of "retaliation" against Gitch is sufficient, under the standards of "notice pleading," to encompass "post-release" retaliation. The EEOC again fails to identify what that "post-release" retaliation against Gitch might be. Until and unless the EEOC identifies a factual basis for a "post-release" retaliation claim on Gitch's behalf, any ruling by the court on the EEOC's ability to assert such a claim in this action would be "premature" or "advisory," because the question is not yet fairly presented.

Thus, despite reconsideration of the validity of Gitch's release, the court reaffirms its conclusion in its June 13, 2001, order that the EEOC cannot assert any claim *presently before the court* on Gitch's behalf that is not subject to her release. Because the EEOC has not asserted any post-termination claims on Gitch's behalf, that part of the EEOC's Rule 59(e) motion seeking clarification of whether the EEOC can assert post-release claims on Gitch's behalf will be denied.

Similarly, Gitch does not assert on her own behalf any claims based on post-release conduct by AHP. In her Complaint In Intervention, the factual allegations of wrongful conduct by AHP toward Gitch consist of the following: (1) an allegation that "Defendants promoted Hanlon and retaliated against ... Joyce Gitch, the HR Manager ... who had investigated or reported the allegations of sexual harassment against David Hanlon," Lewis's and Gitch's Complaint In Intervention, ¶ 11; and (2) an allegation that "Defendants subjected Joyce Gitch, HR Manager, to a sexually hostile working environment following her sexual harassment investigation of Hanlon by threatening, belittling, removing support, resources, and staff

from Gitch, denying her the ability to perform her job as HR Manager, cutting her pay increase, and terminating Gitch in retaliation for her participation in the enforcement of civil rights policies and procedures." *Id.* at ¶ 13. There are no additional factual allegations in support of the specific claims that would expand those claims to include post-release conduct. Because Gitch's own allegations pertain only to pre-termination, or at least pre-release, conduct by AHP, if her release is ultimately found to be valid, her claims in intervention, as presently alleged, will fail in their entirety.

### 2. Portions of the order pertaining to Wood's release

Just as certain key issues regarding the validity of Gitch's release were largely or entirely dispositive of motions relating to Gitch, one key issue is also largely or entirely dispositive of motions relating to Wood. That issue is the scope of Wood's release. Specifically, determination of the scope of Wood's release will be completely or largely dispositive of the remaining portions of the EEOC's June 27, 2001, Rule 59(e) Motion, because it will resolve whether or not the EEOC can assert any claims on Wood's behalf. The same issue will also resolve most, if not all, of the June 28, 2001, Rule 59(e) motion by Gitch and "class member" Wood concerning orders denying Wood's intervention, because it will resolve what, if any, claims Wood himself can assert as an intervenor in this action. Significant companion issues with regard to Wood are what claims the EEOC and Wood have attempted to assert in this action and what claims they *can* assert, irrespective of the scope of Wood's release.

### a. Scope of Wood's release

■ In his Rule 59(e) motion, Wood contends that the Iowa District Court held, and the parties do not dispute, that Wood's release does not release claims arising after the release was executed. He contends that this court "overlooked" this exception to the release in its June 13, 2001, order and orders denying him leave to intervene, because he should still be allowed to assert, and the EEOC should be allowed to assert on his behalf, claims arising after the date of his release. Although he concedes that he was first notified of his termination on January 6, 1999, Wood argues that his release was executed on January 14, 1999, and that his termination did not become effective until February 28, 1999, so that his termination involves post-release conduct that is not subject to the release. Similarly, the EEOC seeks "clarification" of whether the court's June 13, 2001, order precludes it from asserting post-release claims on Wood's behalf on the ground that the release did not pertain to such claims. AHP, on the other hand, contends that Wood was terminated on January 6, 1999, before the date of his release, whatever the effective date of that termination may have been, so that his January 14, 1999, release plainly releases any claim arising from his termination. AHP also contends that, under the language of the release, Wood expressly released claims arising from the termination of his employment, whenever the termination may have occurred, so that he cannot argue that the release did not relate to claims arising from his termination, even if the termination followed the date of the release.

The court concludes that Wood's argument regarding the temporal relationship of the release and the effective date of his termination is too clever by half. First, the language of the release supports AHP's, not Wood's, interpretation. The release expressly states, "I voluntarily release the Company ... from any and all

claims, liabilities, demands, and causes of action known and unknown *that I may have as a result of my employment or my termination from employment with the Company.*" *See* AHP's Memorandum In Support Of Motion For Partial Dismissal, Exhibit B (Document No. 8) at 1 (also expressly including claims under Title VII as included in the General Release). Thus, the release expressly applies to claims arising from Wood's *termination,* and the clear intent of the parties from the plain language of the agreement was that the agreement would release claims arising from Wood's termination, even if the decision to terminate him did not become effective until after the release was signed.

■ Second, AHP is correct that the date on which a claim of wrongful termination accrues is the date on which the decision to terminate the plaintiff is made, not the date the termination becomes effective. As the Eighth Circuit Court of Appeals recently explained in a Title VII case involving denial of tenure,

> The Supreme Court has recognized a distinction between the present effects of a past discriminatory act and present continuing discrimination. *Compare Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (holding that perpetuation of salary discrepancies based on race were actionable under Title VII, regardless of the fact that the discriminatory practice began prior to Title VII's effective date), with *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that the limitations period was triggered at the moment the college allegedly denied plaintiff tenure for a discriminatory reason, rather than a year later when he ultimately lost his job). Cooper argues that because SCSU granted tenure to seventeen white faculty members who lacked Ph. Ds during

the time it was withholding tenure from Cooper, the statute of limitations issue should be analyzed as a continuing violations case. In essence, Cooper argues that SCSU committed a wrongful act of discrimination each time it granted tenure to a white faculty member who did not possess a Ph.D. SCSU maintains, however, that the uncontroverted evidence shows these other faculty members were not similarly situated to Cooper, and, thus, Cooper's appeal should be resolved under *Ricks,* a case involving one wrongful past act with continuing effects in the present.

> In *Ricks,* the Supreme Court held that Title VII's limitations period began to run when the plaintiff, a college professor, was notified that he was denied tenure and would be offered a one-year terminal contract, rather than when the terminal contract expired a year later. *See id.* at 259, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431. The Supreme Court reasoned that the only alleged discrimination occurred at the time the tenure decision was made and communicated to the college professor, "even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.* at 258, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (emphasis in original) (internal quotation omitted). The Court explained that in order for the limitations period to commence with the date of the terminal contract:

> > Ricks would have had to allege and prove that the manner in which his employment was terminated [via the terminal contract] differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure. But no suggestion has been made that

Ricks was treated differently from other unsuccessful tenure aspirants. *Id.* at 258, 101 S.Ct. 498.

SCSU notified Cooper in 1992 that he would not receive tenure and would automatically be terminated from the Art Department unless he obtained his Ph.D. before May 1, 1995. As in *Ricks,* the 1996 denial of tenure and termination were automatic effects of SCSU's 1992 decision to require Cooper to obtain a Ph.D. before he could receive tenure. Moreover, as in *Ricks,* Cooper was "abundantly forewarned" of the consequences of not obtaining his Ph.D. within the next three years. *See id.* at 262 n. 16, 101 S.Ct. 498. Thus, unless Cooper can identify a discriminatory act that occurred after SCSU's 1992 tenure decision, the limitations period began to run when SCSU notified him of its official tenure decision in 1992. *See id.* at 258, 101 S.Ct. 498. Cooper failed to meet this burden.

*Cooper v. St. Cloud State Univ.,* 226 F.3d 964, 966–67 (8th Cir.2000). Thus, courts must look at the date of the termination decision, not the date the decision becomes effective, to determine when the terminated employee's action accrues.

Wood's circumstances are analogous to those considered in *Cooper.* AHP notified Wood on January 6, 1999, that his employment would be terminated. Wood even identifies this date as his date of termination in his original charge to the EEOC. As in *Cooper,* the January 6, 1999, termination became "effective" somewhat later, on February 28, 1999. Thus, as in *Cooper,* Wood "was 'abundantly forewarned'" that his employment would terminate in the near future. *See Cooper,* 226 F.3d at 967. Thus, Wood's "termination" occurred on January 6, 1999, at the time that the termination decision was made, not upon the date the termination became "effective."

*Id.* Plainly, then, the release of claims "as a result of [Wood's] termination of employment" related to the *decision* to terminate him, which he concedes occurred on January 6, 1999, because that is the date of the conduct at issue in any such claims.

Nor is the court persuaded by Wood's eleventh hour assertion at oral arguments that, in light of the hard fought negotiations concerning his release, he was "constructively discharged" only after his release was signed, and thus, the release does not apply to his "termination." There was nothing "constructive" about Wood's discharge, even if the negotiations were hard fought, because all of the parties to the negotiation understood that Wood's termination had already been decided, so that Wood was "abundantly forewarned" of his imminent departure from AHP's employment, even if he was allowed to negotiate some of the details of his exit. *See id.* (the plaintiff had abundant forewarning of his termination, even if that termination was contingent upon his failure to obtain a Ph.D. within the time provided).

The release expressly excepts only "any rights or claims that I may have *under the Age Discrimination in Employment Act* which may arise after the date I sign this agreement *or* my right to file a charge with or cooperate in an investigation with the Equal Employment Opportunity Commission which may arise after the date I sign this agreement." AHP's Memorandum In Support Of Motion For Partial Dismissal, Exhibit B (Document No. 8) (Wood's Release) at 1–2 (emphasis added). Wood does not allege an ADEA claim, and he does not allege that he suffered retaliation because he cooperated in an investigation with the EEOC that arose *after* the date he signed his release. Rather, he alleges that AHP retaliated against him *after* he signed the release for his partic-

ipation in an internal investigation of discrimination or harassment that occurred *before* he signed the release. Nevertheless, the court agrees with the parties that contract principles applicable to releases generally do not bar claims that accrue after the date a release was signed. Although Wood's termination claim is not a claim that accrued only after he signed his release, the question is, has Wood or the EEOC, on Wood's behalf, asserted any post-release retaliation or other claims?

### b. What claims are precluded?

As explained above, under the plain language of Wood's release, Wood has released any claim arising from his *termination*. Therefore, neither Wood nor the EEOC on Wood's behalf can assert a claim that Wood's termination was discriminatory, retaliatory, or otherwise wrongful, including common-law claims. *See* Wood's Release at 1 (stating that the release releases "rights or claims" including, *inter alia*, "any and all possible claims growing out of any legal restrictions on the Company's rights to terminate its employees," so that the release releases common-law claims as well as statutory claims). As with claims on Gitch's behalf, what claims in this action are otherwise precluded by Wood's release goes hand in hand with what claims *are or can be asserted* in this action.

***i. Claims by the EEOC.*** The court finds that the EEOC's claims on behalf of Wood are identical to those on behalf of Gitch, which were detailed above. Thus, no conduct subsequent to Wood's termination, retaliatory or otherwise, was alleged by the EEOC to be the subject of its original complaint. The EEOC's First Amended Complaint likewise identifies the claim on behalf of Wood as "retaliation" and identifies the specifications of retaliation in the same way as the original com-

plaint. *See* First Amended Complaint, "Nature Of The Action," unnumbered first paragraph; ¶¶ 6, 7(a) & 7(c). Thus, the EEOC has simply never asserted a claim on Wood's behalf based on post-release conduct by AHP. Because there is no challenge to the validity of Wood's release, and the court concluded above that Wood's release expressly releases claims pertaining to his "termination," even if the termination became effective after the date of the release, then the EEOC did not assert any unreleased claims on behalf of Wood in its original or amended complaints. Although Wood purports to be a "class member" in the EEOC's action pursuant to the First Amended Complaint, he is not. The First Amended Complaint defines the class as "a class of *female* employees who have been aggrieved by" unlawful employment practices "on the basis of sex harassment" to which Parker, Kolacia, and Lewis were subjected. *Id.*, "Nature of the Action," unnumbered first paragraph (emphasis added). Wood is not female, nor was he "sexually harassed," as were Parker, Kolacia, and Lewis. He is a male employee asserting retaliation for investigating claims of sexual harassment.

Although it appears plain that the EEOC has never alleged any "post-release" retaliation against Wood in its complaints, the EEOC contends that its allegation of "retaliation" is sufficient, under "notice pleading" rules, to encompass post-release retaliation as well as the pre-release retaliation specifically identified. Although there is no identification of any post-release retaliation in either the EEOC's original or amended complaints, the EEOC now identifies post-release retaliation against Wood as including refusal to allow him to exercise stock options after his termination. AHP, however, argues that the EEOC *cannot* assert any post-release claim on Wood's behalf, not just because the EEOC has never pleaded

them, but because the EEOC has failed to meet statutory prerequisites to assert any such claims. The EEOC disagrees, arguing that all of the prerequisites for such post-release claims on Wood's behalf have been met.

■ The court's analysis of this issue begins with an examination of the prerequisites to suit by the EEOC and the scope of claims the EEOC is empowered to assert. In *EEOC v. Shell Oil Co.*, 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), the Supreme Court stated, "Primary responsibility for enforcing Title VII has been entrusted to the EEOC." *Shell Oil*, 466 U.S. at 61–62, 104 S.Ct. 1621 (citing 42 U.S.C. § 2000e–5(a)). The Court explained the EEOC's enforcement procedure as follows:

> In its current form, Title VII sets forth "an integrated, multistep enforcement procedure" that enables the Commission to detect and remedy instances of discrimination. *See Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 359, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977). The process begins with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice....
>
> [The statute] require[s] the Commission to "serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer ... within ten days" of the filing of the charge. 42 U.S.C. § 2000e–5(b).
>
> After a charge has been filed, the EEOC conducts an investigation of the allegations contained therein.... If, after completing its investigation, the EEOC determines that there is "reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference,

> conciliation, and persuasion." § 2000e–5(b). If those methods prove ineffectual, the Commission is empowered to bring a civil action against the employer. § 2000e–5(f)(1).

*Shell Oil*, 466 U.S. at 63–64, 104 S.Ct. 1621. Subsequent amendments to Title VII have not altered these procedures. Therefore, as one federal district court recently explained,

> Conditions precedent for the EEOC to file a lawsuit include: (1) filing with the Commission of a timely charge of discrimination at least 30 days before the suit is filed; (2) notice of the charge served on the Respondent; (3) an investigation of the charge; (4) a determination by the Commission that reasonable cause exists to believe that the charge is true; (5) an attempt by the EEOC to eliminate the unlawful employment practices by informal methods of conference, conciliation and persuasion; and (6) inability of the Commission to secure from the Respondent a conciliation agreement acceptable to the EEOC. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 74–81, 104 S.Ct. 1621, 1633–37, 80 L.Ed.2d 41 (1984); *see also EEOC v. Airguide Corp.*, 539 F.2d 1038, 1040 (5th Cir. 1976).

*EEOC v. Premier Operator Servs., Inc.*, 75 F.Supp.2d 550, 562 (N.D.Tex.1999); *see also EEOC v. Hearst Corp.*, 103 F.3d 462, 468–69 (5th Cir.1997) (outlining the same steps in the procedure); *Harris v. Amoco Production Co.*, 768 F.2d 669, 677 (5th Cir.1985) ("If the Commission has notified the implicated employer, investigated the claim, found reasonable cause to sue, and unsuccessfully attempted to conciliate, the agency can bring suit in its own name."). "These separate stages are important to the statute's enforcement scheme because of the different roles that the EEOC plays in the management of discrimination

charges: administrator, investigator, mediator, and finally, enforcer." *Hearst Corp.*, 103 F.3d at 469.

In the course of this procedure, a "reasonable cause" determination by the EEOC is critical:

> The statute directs the EEOC to notify the respondent of the charge within 10 days, to investigate the charge, *and to determine* "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge" *whether there is reasonable cause to believe that the charge is true.* 42 U.S.C. § 2000e–5(b). *If the EEOC finds no reasonable cause, then it must dismiss the charge. See id. If it finds reasonable cause, then it must attempt to resolve the dispute* "by informal methods of conference, conciliation, and persuasion." *Id.* "If within thirty days after a charge is filed ... the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any [non-governmental] respondent...." *Id.* § 2000e–5(f)(1).

*Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1340 (D.C.Cir.1999); *Hearst Corp.*, 103 F.3d at 468. Thus, following investigation, a determination that "reasonable cause" is lacking ends the EEOC's procedures, while a determination that there is "reasonable cause" initiates the conciliation process, and also opens the door to suit by the EEOC, if conciliation fails.

If "reasonable cause" is found, the EEOC *must* pursue conciliation. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir.1999) ("If the EEOC finds reasonable cause to believe discrimination occurred, it must 'endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.' ") (quoting *Shell Oil*, 466 U.S. at 68, 104 S.Ct. 1621); *Hearst Corp.*, 103 F.3d at 468–69. Upon its failure to secure an acceptable conciliation agreement, the EEOC *may* bring suit. *Id.* ("If the EEOC cannot secure an acceptable conciliation agreement from the employer, it 'may bring a civil action against any respondent not a government, government agency, or political subdivision named in the charge.' ") (quoting 42 U.S.C. § 2000e–5(f)). Thus, "Congress established that the EEOC may only file suit if it has been unable to secure a conciliation agreement," *Hearst Corp.*, 103 F.3d at 468–69, and entry into the conciliation process is in turn dependent on a finding of "reasonable cause." *Id.; see also Martini*, 178 F.3d at 1340; *Frank's Nursery & Crafts, Inc.*, 177 F.3d at 455.

To put it another way, " '[E]ach step in the Commission's administrative process is designed to be a prerequisite to the following step and, ultimately, to suit.' " *EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir.1981) (quoting *EEOC v. E.I. DuPont de Nemours & Co.*, 373 F.Supp. 1321, 1336 (D.Del.1974), *aff'd*, 516 F.2d 1297 (3d Cir.1975)), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). Similarly, the Ninth Circuit Court of Appeals adopted the reasoning of other courts on the importance of a reasonable cause determination and conciliation as prerequisites to suit by the EEOC:

> [T]he court in *EEOC v. E.I. DuPont de Nemours and Co.*, 373 F.Supp. 1321, 1333 (D.Del.1974), *aff'd*, 516 F.2d 1297 (3d Cir.1975), stated that:
>
> > The Commission's functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII. It is difficult to believe that Congress directed the Commission to make a determination

of reasonable cause on the merits of a charge and nevertheless contemplated that the Commission could institute such litigation before it makes such a determination. Similarly, it is difficult to conclude that Congress directed the Commission to conciliate and then authorize it to initiate adversary proceedings before the possibility of voluntary compliance has been exhausted.

Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC[.]

*EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir.1982). In short, courts have read Title VII to "require that a particular charge of discrimination be the subject of the reasonable cause determination and conciliation before being subject to suit by the EEOC." *American Nat'l Bank*, 652 F.2d at 1186.[7]

▮ Turning to the scope of the claims the EEOC may assert, admittedly, "once the EEOC decides to sue in its own name, it is not limited to the facts presented in the charge." *Waffle House, Inc.*, 193 F.3d at 810. "Rather, the EEOC may sue based on '[a]ny violations that [it] ascertains in the course of a reasonable investigation of the charging party's complaint.'" *Id.* (quoting *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). However, as this statement indicates, the EEOC's power to sue depends upon ascertainment of a violation, in other words, upon a "reasonable cause" determination that a violation has occurred.

▮ Similarly, our own Circuit Court of Appeals has examined the permissible scope of a lawsuit by the EEOC:

The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (citations omitted); *Satz v. ITT Financial Corp.*, 619 F.2d 738, 741 (8th Cir.1980); *EEOC v. Brookhaven Bank & Trust Co.*, 614 F.2d 1022, 1024 (5th Cir.1980) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge or developed during a reasonable investigation of the charge, *so long as the additional allegations of discrimination are included in the reasonable cause determination* and subject to a conciliation proceeding. *Brookhaven*, 614 F.2d at 1025; *EEOC v. General Elec. Co.*, 532 F.2d 359, 366 (4th Cir.1976) (footnote omitted).

Here, the original charge alleged only discriminatory demotion. However, in

---

7. The Fourth Circuit Court of Appeals subsequently explained the limitations on this rule: Although we have held that investigation, determination of reasonable cause, and an effort at conciliation were jurisdictional prerequisites to a civil action brought by the Commission, *EEOC v. American National Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), we reached that decision in the context of an unfair employment practice charge lodged pursuant to § 706(f)(1). These prerequisites clearly do not apply to a § 706(f)(2) civil action for preliminary relief. Moreover, § 706(f)(3) mentions no prerequisite in broadly providing for federal district court jurisdiction over "actions brought under" Title VII. *EEOC v. Henry Beck Co.*, 729 F.2d 301, 303 n. 7 (4th Cir.1984).

the course of its reasonable investigation of this allegation, EEOC uncovered evidence of constructive discharge and wage discrimination. The constructive discharge and wage discrimination claims are clearly like or related to the substance of the EEOC charge. *E.g., Satz,* 619 F.2d at 741–42. *Furthermore, EEOC included the allegations of constructive discharge and wage discrimination in its reasonable cause determination on August 15, 1989.* EEOC gave Delight an opportunity to conciliate all three allegations. Thus, all three claims were properly before the district court. *Nealon,* 958 F.2d at 590; *Satz,* 619 F.2d at 741–42; *Brookhaven,* 614 F.2d at 1025; *General Electric,* 532 F.2d at 366.

*EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 668–69 (8th Cir.1992) (emphasis added). Thus, even where additional claims are like or reasonably related to the claims asserted in the original charge, and could be reasonably expected to grow out of the investigation of the original charge, the Eighth Circuit Court of Appeals requires a determination of reasonable cause *as to those claims* and the opportunity for conciliation before the EEOC may include those claims in its suit.

Some years ago, the Fourth Circuit Court of Appeals explained the importance of the prerequisite of a reasonable cause determination and conciliation before the EEOC files suit, thereby providing guidance on the scope of the suit the EEOC may permissibly bring:

This requirement, for example, protects an employer charged in the reasonable cause determination with race discrimination in hiring against being surprised by a subsequent suit including charges of race discrimination in layoffs or promotion, or sex discrimination. There would have been no prior notice to the employer that practices relating to these charges were suspect nor an opportunity for the employer to remedy the problems out of court.

*American Nat'l Bank,* 652 F.2d at 1186. Thus, the Fourth Circuit Court of Appeals read the "reasonable cause" and "conciliation" prerequisites to suit as necessary to provide notice of the specific *practice* the EEOC had determined to be unlawful—hiring, layoff, promotion, etc.—not just the *manner* in which the EEOC had determined the employer's practices to be unlawful—discrimination, harassment, retaliation, etc. By the same token, the Fourth Circuit Court of Appeals held that the district court had improperly concluded that the EEOC could not sue to redress discrimination in hiring at the branches of a bank in one city, when the original charge on which the suit was based alleged discrimination in hiring only at the branches of the bank in another city. *See id.* at 1185. The appellate court concluded that the district court had improperly characterized the question as whether or not it had jurisdiction over "new" charges of discrimination brought for the first time by the EEOC in its civil complaint. *Id.* Rather, the appellate court reasoned, "The crucial issue was instead whether the district court had jurisdiction over the same charges of discrimination against a single defendant, expanded to include the same *practices* at all its branch offices when the original charge and investigation focused on one city but where there was common ownership and control over branches in both that city and a nearby city, and where the challenged hiring *practices* for all branches were similar." *Id.* (emphasis added). When the issue was properly characterized, the Fourth Circuit Court of Appeals concluded "that jurisdiction over charges pertaining to all branches of [the company] was proper in this case because there was, through the EEOC's investigation and attempted conciliation with regard

to [one city], adequate notice to the defendant of the *practices* under investigation and ample opportunity for conciliation concerning those *practices.*" *Id.* (emphasis added).

■ Here, AHP points out that Wood's initial charge alleged only retaliation in his termination. AHP argues further that Wood amended his charge to allege retaliation regarding the exercise of his stock options, thus squarely presenting the issue of post-release retaliation to the EEOC, but the Determination Letter issued by the EEOC on February 22, 2000, limited a reasonable cause determination to Wood's allegation of retaliatory *termination.* AHP argues that, in the absence of a reasonable cause determination, the EEOC never attempted to conciliate any post-release retaliation claim regarding the exercise of Wood's stock options, so that the EEOC cannot now assert such a claim in this litigation. The EEOC responds that the "base charge" in Wood's original and amended charges is "retaliation," that it properly investigated the charge of "retaliation," and, in its determination letter, found cause. The EEOC argues that AHP's contention that the reasonable cause determination as to Wood's termination somehow narrowed the scope of its findings of retaliation to include only the issues surrounding termination is erroneous, because AHP has misconstrued the case law on which it relies. Specifically, the EEOC contends that one case cited by AHP, *Patterson v. American Tobacco Co.,* 535 F.2d 257, 271 (4th Cir.1976), involved the EEOC's admission that it had not attempted conciliation before filing suit, and that the other case, *EEOC v. Sherwood Medical Industries,* 452 F.Supp. 678 (M.D.Fla.1978), involved two totally separate issues of race and male gender discrimination and the total silence of the conciliation agreement as to the latter claim. However, in this case, the EEOC asserts that AHP clearly knew of the post-release retaliation allegations by virtue of Wood's original and amended charges, and the conciliation agreement indicates that retaliation was an issue, as evidenced by the retaliation prohibition provision.

The court finds, first, that Wood asserted only retaliation with regard to his *termination* in his initial charge of discrimination filed with the EEOC on September 28, 1999. *See* Defendant's Memorandum Of Law In Support Of Its Resistance To The Rule 59(e) Motion Of Plaintiff Equal Employment Opportunity Commission (AHP's Resistance to EEOC's Rule 59(e) Motion), Exhibit A. The "Particulars" of Wood's initial charge are the following:

I. On November 30, 1988, I began my employment with the Respondent. In August 1998, I was involved in an investigation of a sexual harassment claim that was registered against Mr. Dave Hanlon, Vice President Fort Dodge Operations. As a result of the investigation that was completed against Mr. Hanlon, I recommended to Chet Shubert, Vice President, Human Resources, that Mr. Hanlon's employment be terminated. Instead of terminating Mr. Hanlon's employment, the Respondent promoted Mr. Hanlon to a position in which he became my immediate supervisor. On January 6, 1999, I was terminated from my employment.

II. Mr. Shubert informed me that I was being terminated because "upper management had lost confidence in me."

III. *I believe that the Respondent has discriminated against me, in retaliation for my involvement in the sexual harassment investigation against Mr. Hanlon, by terminating my employment,* in violation of Title VII of the Civil Rights Act of 1964, as amended.

AHP's Resistance to EEOC's Rule 59(e) Motion, Exhibit A, 2 (emphasis added). Although this charge of discrimination was filed several months after the allegedly retaliatory termination, and furthermore, several months after the allegedly retaliatory refusal to allow Wood to exercise stock options in May of 1999, there is not the merest hint that any employment *practice* other than Wood's termination was alleged to be retaliatory.

As AHP points out, however, Wood's First Amended Charge Of Discrimination, filed on or about December 1, 1999, squarely presents Wood's allegation of post-release retaliation regarding the exercise of his stock options. Specifically, the First Amended Charge alleges the following, in pertinent part:

2. The latest date discrimination occurred includes May 21, 1998[sic], and each date thereafter Defendant employers refused and failed to pay ⅛ of Complainant's stock option grant. Mr. Wood's termination date February 28, 1999, pursuant to the attached amended termination letter (Exh. 1) dated January 12, 1999, provided at Paragraph 5 for the exercise of Mr. Wood's stock options in three months of his termination date of 2–28–99. The employer's breach of the stock option provision made the General Release null and void and of no effect.

3. Each day the employer failed to pay Mr. Wood's stock option in 1999 in retaliation for Mr. Wood's sexual harassment investigation and recommendations constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, as amended.

4. The cause of discrimination is both *sex and* retaliation, based on Mr. Wood's role in a major sexual harassment investigation and recommendations against David Hanlon, the employer's Vice President and Mr. Wood's supervisor.

AHP's Resistance to EEOC's Rule 59(e) Motion, Exhibit B, 1–2. Thus, investigation of the post-release retaliation concerning refusal to pay stock options should have followed from this amended charge, whether or not such an investigation would have involved retaliation like or related to the substance of the allegations of retaliatory termination in the initial charge and whether or not investigation of such allegations reasonably could be expected to grow out of the investigation triggered by the initial charge. *Cf. Delight Wholesale Co.*, 973 F.2d at 668 ("The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge.").

However, what is fatal to the EEOC's assertion that it can pursue in this lawsuit claims on Wood's behalf concerning post-termination retaliation is the complete absence of any "reasonable cause" determination with regard to such *practices*. In the Determination letter, issued February 22, 2000, well after Wood amended his charge to assert post-termination retaliation, the EEOC district director found as follows:

During the investigation, relevant, available witnesses were interviewed, and relevant documents were reviewed. I have considered all the evidence disclosed during the investigation and find that *on the allegation of termination, there is reasonable cause to believe that there is a violation of Title VII* of the Civil Rights Act of 1964, as amended.

AHP's Resistance to EEOC's Rule 59(e) Motion, Exhibit C, 1 (emphasis added). Thus, the only *practice* on which the

EEOC found reasonable cause to believe that there had been a violation of Title VII was Wood's *termination*. As explained above, in *Delight Wholesale Company*, the Eighth Circuit Court of Appeals recognized the difference between allegations of discrimination involving one practice, "discriminatory demotion," and allegations of discrimination in other practices, "constructive discharge and wage discrimination," which had turned up during a reasonable investigation and which the court found were "clearly like or related to the substance of the EEOC charge." *Delight Wholesale Co.*, 973 F.2d at 669. The court stated the rule to be, "The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge, *so long as the additional allegations of discrimination are included in the reasonable cause determination and subjection to a conciliation proceeding*," and held that the EEOC could pursue claims involving all three practices, because the reasonable cause determination included all three. *Id.* (emphasis added). Similarly, as also explained above, in *American National Bank*, the Fourth Circuit Court of Appeals distinguished between allegations of race discrimination in different employment *practices*, such as hiring, layoffs, and promotions, each of which would require a reasonable cause determination, and allegations of discrimination regarding a specific practice, such as hiring, which could be the subject of suit on behalf of a class at all branches of a company, without a separate reasonable cause determination, on the basis of a reasonable cause determination as to allegations of discriminatory hiring practices at branches in one city charged by an individual. *See American Nat'l Bank*, 652 F.2d at 1185–86. Here, the EEOC found reasonable cause as to only *one* practice, retaliatory termination. The EEOC cannot "parlay" that reason-

able cause determination into satisfaction of the prerequisites for suit with regard to *other* practices, involving post-termination retaliation, without a separate "reasonable cause" determination as to the additional allegations of retaliation. *See Delight Wholesale Co.*, 973 F.2d at 668–69; *American Nat'l Bank*, 652 F.2d at 1185–86.

The EEOC, however, likens the present case to *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097 (6th Cir.1984). The EEOC argues that, in *Keco Industries*, the court concluded that the EEOC could properly assert claims of sex discrimination on the basis of sex-segregated job classifications on behalf of a class, where the original administrative charge concerned only the claims of an individual, overturning summary judgment in favor of the defendant, which the defendant had asserted was proper on the ground that the EEOC did not investigate, find reasonable cause on, or conciliate the claims of discrimination against women as a class. The EEOC asserts that the court in *Keco Industries* emphasized that the proposed conciliation agreement contained language that required all jobs to be open to female employees, which was evidence that the EEOC did address the class claims during conciliation. Here, the EEOC argues that, consistent with the decision in *Keco Industries*, it fulfilled the purposes of the reasonable cause determination by notifying AHP of the retaliation findings and by providing a basis for later conciliation, which included discussions concerning prohibitions on retaliation.

The court finds that *Keco Industries* does not permit inclusion of "post-release" retaliation claims in this case. In *Keco Industries*, the Sixth Circuit Court of Appeals reiterated that, in *EEOC v. Bailey Co., Inc.*, 563 F.2d 439 (6th Cir.1977), the court had "held that a complaint filed by the EEOC is limited to the investigation

*reasonably expected* to grow out of the initial charge of discrimination." *See Keco Indus., Inc.,* 748 F.2d at 1101 (emphasis in the original); *and compare Delight Wholesale Co.,* 973 F.2d at 668–69 ("The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which *reasonably can be expected* to grow out of the investigation triggered by the charge.") (emphasis added). The court reasoned that, in *Bailey,* it had found that a charge of religious discrimination, discovered after the EEOC began its investigation of the initial charge, could not be reasonably expected to grow out of the initial charge of race and sex discrimination. *Id.* at 1101. Therefore, the *Keco* court noted, the court had held in *Bailey* that the religious discrimination charge required a separate investigation, reasonable cause determination, and conciliation effort, before it could be the subject of suit by the EEOC. *See id.* at 1101.

The *Keco* court found that the case then before it was distinguishable from *Bailey:*

> In the present case, the EEOC has not brought a subsequent, unprepared discrimination claim against KECO. Instead, the EEOC has merely broadened the scope of Ms. Grime's charge by alleging that KECO has engaged in sexual discrimination against all of its female employees in its assembly division. Consequently, the only difference between the EEOC's later charge and Ms. Grimes' initial charge is the number of persons victimized by KECO's allegedly discriminatory practices. As this later class-based claim brought by the EEOC could have reasonably been expected to grow out of Ms. Grime's individual complaint of discrimination, no new additional proceedings were necessary. Thus,

we find *Bailey* distinguishable from the present case.

> After determining that reasonable cause exists, the EEOC must attempt to conciliate the discrimination claim with the employer before it can be the subject of litigation in the district court. Only after the EEOC is unable to obtain an acceptable conciliation agreement from the employer may the agency file suit in court. *See* 42 U.S.C. § 2000e–5(b), (f); *see also EEOC v. Sears, Roebuck and Co.,* 650 F.2d 14, 18–19 (2d Cir.1981); *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir.1976).

*Keco Indus., Inc.,* 748 F.2d at 1101.

In *Keco,* the court also found that, not only was the class claim asserted by the EEOC one that could reasonably be expected to grow out of the EEOC's investigation of the individual complaint, but that the EEOC had satisfied both the "reasonable cause determination" and "conciliation" prerequisites to suit as to that claim. *Id.* Specifically, the court found the following:

> The EEOC found a wage differential and job segregation between male and female employees in the assembly division. In response to these findings, Part III of the EEOC's proposed settlement agreement addressed those earlier findings by stating that all jobs would be open to female employees unless gender was shown to be a bona fide occupational qualification. KECO, however, rejected this conciliation agreement.
>
> The EEOC is under no duty to attempt further conciliation after an employer rejects its offer.

*Keco Indus., Inc.,* 748 F.2d at 1101–02.

In short, *Keco Industries* still requires the EEOC to make a reasonable cause determination as to additional allegations of discrimination involving additional employment practices, even if those additional

914

practices may fall within the scope of the conciliation attempted by the EEOC. *Keco Industries* thus is an example of the rule that " '[e]ach step in the Commission's administrative process is designed to be a prerequisite to the following step and, ultimately, to suit.' " *American Nat'l Bank,* 652 F.2d at 1185 (quoting *E.I. DuPont de Nemours & Co.,* 373 F.Supp. at 1336); *see also Martini,* 178 F.3d at 1340 (recognizing the critical importance of the "reasonable cause" determination in the EEOC's administrative procedures); *Frank's Nursery & Crafts, Inc.,* 177 F.3d at 455 (same); *Hearst Corp.,* 103 F.3d at 468 (same). One step recognized in *Keco Industries,* as well as other authorities, the "reasonable cause" determination as to the practice in question, is missing here. Thus, *Keco Industries* does not excuse the EEOC from its failure to make a determination that there was reasonable cause to believe post-release retaliation in violation of Title VII had occurred, even though Wood alleged such retaliation in his amended charge, nor does *Keco Industries* permit the EEOC to pursue such a claim in these proceedings, even if the anti-retaliation provisions of the conciliation agreement offered to AHP are sufficiently broad to encompass the conduct at issue in Wood's amended charge alleging post-release retaliation.

*Keco Industries* is also distinguishable, in that the "additional" claim at issue in that case was a class action claim, premised on the same discriminatory practice alleged by the individual claimant. As the Seventh Circuit Court of Appeals has since explained,

> The EEOC has independent standing to bring lawsuits to enforce Title VII, *Equal Employment Opportunity Comm'n v. United Parcel Service,* 860 F.2d 372 (10th Cir.1988). It may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties who are identified during the investigation. *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). Further, because the EEOC represents the public interest in a non-discriminatory market for employment, it need not obtain class certification to bring an action on behalf of a class of unidentified individuals. *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). *Cf.* Fed.R.Civ.P. Rule 23.

*EEOC v. United Parcel Serv.,* 94 F.3d 314, 318 (7th Cir.1996). Here, however, the question is whether the EEOC has satisfied the prerequisites for suit on claims involving *different* employment practices toward an individual, not whether the EEOC can bring suit to address the *same* employment practices toward a class as were alleged by an individual.

Therefore, the court finds that it is the EEOC, not AHP, that has misconstrued the case law addressing the proper scope of the EEOC's lawsuit. The record here demonstrates that the EEOC made no "reasonable cause" determination with regard to the separate employment *practice* of post-release retaliation, as required under applicable case law for the EEOC's suit to encompass that separate employment practice. Consequently, the EEOC has failed to satisfy the prerequisites for suit regarding any *practice* directed at Wood other than his retaliatory termination, and cannot assert in this litigation any claims pertaining to post-release retaliation against Wood.

■ *ii. Claims by Wood.* Turning to Wood's proffered Complaint In Intervention, the court finds that Wood *has* attempted to assert post-release retaliatory

conduct by AHP. As factual background in support of his claims, Wood alleges pre-termination retaliation and that the termination itself was retaliatory, which would only form the basis for released claims. *See* Wood's Complaint In Intervention, ¶ 12 & 14. However, he also alleges what appears to be post-termination wrongful conduct by alleging that "[d]efendants misrepresented the determining reason for Wood's termination and the eligibility of stock options for liquidation in violation of Internal Revenue Code § 422 ... [and] failed to correct false information supplied to Plaintiff–Intervenor after offering a severance-release agreement on January 14, 1999. Based on the misrepresentations, it was impossible for Wood to revoke his release within time limits." *Id.* at ¶ 16; *see also* ¶ 20 (reiterating and expanding these allegations). Although the timing of the conduct at issue in this allegation is rather vague, Wood's complaint does suggest post-termination misconduct. Leaving aside the question of whether Wood's claim concerning stock options is precluded by a decision in Iowa state court, there appears to be other post-termination misconduct alleged to be the basis for some of his claims. *See* Count I, ¶ 20 (Title VII harassment and retaliation); Count II (negligent misrepresentation). The court takes no position at this time on whether these claims are futile, preempted, res judicata, or otherwise so deficient as to make intervention inappropriate.

The magistrate judge's order denying Wood leave to intervene could be read as suggesting that a party may only intervene to assert *the same* claims as an existing party, in this case, the EEOC. Although Rule 24 of the Federal Rules of Civil Procedure may permit intervention as of right and permissive intervention on broader grounds than that, *see* FED. R. CIV. P. 24(a) (intervention as of right, including intervention when the intervenor has an interest in the property at issue in the main action or the main action may impede such a property interest as a practical matter) & (b) (permissive intervention, including intervention when the main action and the intervenor's action "have a question of law or fact in common"), Wood originally sought to intervene only pursuant to Rule 24(a)(1), which permits intervention "when a statute of the United States confers an unconditional right to intervene," identifying the pertinent statute as Title VII. *See* Wood's Motion To Intervene, ¶ 7. Thus, Wood relied on his Title VII claim as the basis for intervention as of right.[8] Because his Title VII claim does involve a claim based on post-termination conduct not precluded by his release, the magistrate judge erred by failing to permit intervention to assert that and supplemental state-law claims, even though the EEOC will not now be permitted to pursue claims involving Wood's termination or post-termination retaliation toward Wood. Upon reconsideration, Wood will be permitted to intervene to that extent.

Therefore, upon reconsideration of matters pertaining to Wood, the court will (1) deny those portions of the EEOC's June 27, 2001, Rule 59(e) Motion pertaining to Wood, because there are no post-termination claims asserted by the EEOC on Wood's behalf presently before the court, and no such claims the EEOC can properly assert, making the "clarification" requested by the EEOC unnecessary; and (2) the June 28, 2001, Rule 59(e) motion by Gitch and "class member" Wood concern-

---

8. At the oral arguments, Wood's counsel sought leave to make an oral amendment to seek permissive intervention on the grounds of diversity and presence of common questions of law and fact between the present action and Wood's claims. The oral amendment is denied without prejudice to reassertion in written form.

ing orders denying Wood's intervention will be granted, to the extent that Wood will be granted leave to intervene to assert Title VII claims based on post-termination practices and supplemental state-law claims, to the extent that such claims are not precluded by findings in Wood's state-court action.

## III. CONCLUSION

Upon consideration of the arguments of the parties and the record presented, the various motions before the court are resolved as follows:

1. Plaintiff–Intervenor Gitch's June 22, 2001, Rule 59(e) motion regarding the June 13, 2001, order is **granted** to the extent that the court has reconsidered its June 13, 2001, order and now finds that there are genuine issues of material fact pertaining to the validity of Gitch's release, permitting Gitch and the EEOC on Gitch's behalf to assert the claims presently in this action.

2. Plaintiff EEOC's June 27, 2001, Rule 59(e) motion is **granted** to the extent that the EEOC may assert claims on Gitch's behalf, but the EEOC's request for clarification of the June 13, 2001, order is **denied** to the extent that the court finds the EEOC has not asserted any post-termination claims on behalf of either Gitch or Wood, and cannot do so as to Wood.

3. The June 28, 2001, Rule 59(e) motion by Plaintiff–Intervenor Gitch and "class member" Wood concerning orders denying Wood's intervention is **granted**, to the extent that Wood is granted leave to intervene to assert Title VII claims based on post-termination practices and supplemental state-law claims, to the extent that such claims are not precluded by findings in Wood's state-court action.

4. Plaintiff–Intervenor Gitch's July 5, 2001, motion for partial summary judg-

ment and to strike affirmative defense is **denied in its entirety.**

5. Defendant AHP's July 6, 2001, motion to reconsider Gitch's intervention is **denied in its entirety.**

**IT IS SO ORDERED.**