# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4160
No. 99-2005

_____

| | |
|---|---|
| Rural Water System #1, an Iowa Non-Profit Corporation, | * <br> * <br> * |
| Appellee, | * <br> * |
| v. | *    Appeals from the United States <br> *    District Court for the Northern <br> *    District of Iowa. |
| City of Sioux Center, Iowa, | * <br> * |
| Appellant. | * |

_____

Submitted: December 15, 1999

Filed: January 26, 2000

_____

Before BEAM and HEANEY, Circuit Judges, and KYLE,[1] District Judge.

_____

BEAM, Circuit Judge.

The City of Sioux Center, Iowa, appeals the district court's decision that it violated 7 U.S.C. § 1926(b) by curtailing the service area of Rural Water System #1 (RWS #1). Sioux Center also appeals the district court's decision to award RWS #1 attorney fees. We affirm in part and reverse in part.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

## I.    BACKGROUND

RWS #1 is a nonprofit corporation organized under chapter 504A[2] of the Iowa Code that provides water to rural customers.  It furnishes service in an area that is eighteen miles by thirty-six miles surrounding Sioux Center.[3]  RWS #1 brought suit against Sioux Center under section 1983 and the Declaratory Judgment Act alleging a violation of 7 U.S.C. § 1926(b).  Section 1926(b) prevents municipalities from curtailing the service area of rural water service providers who are indebted to the United States.  RWS #1 claimed that Sioux Center had encroached on its service area by providing water to customers outside of Sioux Center's city limits.  RWS #1 also asserted that Sioux Center violated section 1926(b) when it traded one of its water customers for one of RWS #1's customers. The parties filed cross-motions for summary judgment.

In the district court's ruling on these motions, it determined that RWS #1 fell under the protection of section 1926(b) on July 1, 1992, when RWS #1 took out a loan from the Farm Home Administration[4] (FmHA).  See Rural Water System # 1 v. City of Sioux Center, 967 F. Supp. 1483, 1524 (N.D. Iowa 1997) (RWS #1 I).  The district court also held that the applicable test for a section 1926(b) violation is whether the water provider has "made service available" to the disputed customers.  See id. at 1524-25.  Making service available has two components: (1) the physical ability to

---

[2]Chapter 504A is the Nonprofit Corporation Act of Iowa.  It allows all types of nonprofit entities to incorporate including churches, charities, and schools.  It does not have any specific rules for water districts or even utility providers generally.

[3]For a drawing depicting the service area see Rural Water System #1 v. City of Sioux Center, 29 F. Supp. 2d 975, 983 (N.D. Iowa 1998) (RWS #1 II).

[4]We note that the FmHA is now know as the Rural Utilities Service.  See 7 C.F.R. § 1780.3(a).  We, however, will continue to refer to it as the FmHA to avoid confusion.

serve an area;[5] and (2) the legal right to serve an area. See id. at 1527-28. In its summary judgment ruling, the district court held that RWS #1 had the legal right to serve the area in question, and left the physical ability to serve as an issue for trial. See id. at 1533.

After a bench trial, the district court found that Sioux Center had violated section 1926(b) with respect to four customers. Sioux Center had encroached on RWS #1's service area by providing water to three customers RWS #1 had both the physical ability and legal right to serve. The court also found that Sioux Center had violated section 1926(b) by trading customers.

Sioux Center appeals, contending that under Iowa law RWS #1 did not have the legal right to serve the three customers. Sioux Center also contends that the trading of customers does not violate section 1926(b).

## II. ANALYSIS

### A. The Legal Right to Serve

On appeal, the parties argue that interpretation of Iowa law, specifically section 357A.2 of chapter 357A, controls the outcome of this case.[6] The statute reads:

---

[5]This is sometimes referred to as the pipes-in-the-ground test.

[6]Sioux Center has made a motion requesting certification of this question of interpretation to the Iowa Supreme Court. Sioux Center made this motion after the district court determined the meaning of section 357A.2. We deny the motion because we think this is not a particularly appropriate case for certification and because appellants should be discouraged from the practice of asking for certification after an adverse judgment has been rendered. See Perkins v. Clark Equip. Co., Melrose Div., 823 F.2d 207, 209-10 (8th Cir. 1987).

> Water services, other than water services provided as of April 1, 1987, shall not be provided within two miles of the limits of a city by a rural water district incorporated under this chapter or chapter 504A except as provided in this section.

Iowa Code § 357A.2 (1992). The district court found that this section was not applicable to RWS #1 because it is simply the operator of a water system and is not a water "district," and, therefore, RWS #1 had the legal right to serve the three customers who were within two miles of the city limit. See RWS #1 I, 967 F. Supp. at 1533; RWS #1 II, 29 F. Supp. 2d at 991-992. We agree.

Under Iowa law, rural water providers can choose to be organized in a variety of ways. A water vendor can be: (1) a cooperative association under chapter 499; (2) a nonprofit corporation under chapter 504A; (3) a benefitted water district under chapter 357; or (4) a rural water district under chapter 357A. Each chapter furnishes both the organizational and governing rules for the entity. RWS #1 chose to organize under chapter 504A as a nonprofit corporation. At issue is whether specific provisions of chapter 357A also apply to water providers organized under chapter 504A.

Section 357A.1 defines "district" for the purposes of chapter 357A as "a rural water district incorporated and organized pursuant to the provision of *this chapter*." Iowa Code § 357A.1 (1991) (emphasis added). Thus, the term "district," as written in section 357A.2, does not include providers organized under chapter 504A. Additionally, there is no separately defined entity which is a 504A rural water "district" because an entity organized under chapter 504A is simply a nonprofit corporation. Properly interpreting section 357A.2, in light of the definition given in 357A.1, requires us to cut the "or chapter 504A" language out of the statute because a 504A corporation is clearly not a "district" within the meaning of section 357A.1. If we leave the "or chapter 504A" language in the statute the sentence is definitionally incorrect because "rural water district" modifies both "this chapter" and "chapter 504A." Therefore, we

find that the prohibition established by section 357A.2 does not apply to RWS #1 because it is not a "district" within the meaning of the statute.

While we would prefer to construe the statute without excising words, not to do so requires us to find, without supporting statutory language, that RWS #1 is a "district" as described by section 357A.2. This result would require us, in essence, to add the words "or chapter 504A" into the section 357A.1 definition. So, as can be seen, there is no clean cut approach to the problem.

The surplusage problem probably can be explained by looking at the history of another section in the same chapter, section 357A.20. This section allows a rural water corporation organized under chapter 504A to reincorporate under chapter 357A. See Iowa Code § 357A.20 (1994). Under the 1987 version of the section, a water provider could be both a 504A corporation and a 357A water district after reincorporation. It is likely that section 357A.2 applied to these corporations having dual status. In 1991, however, section 357A.20 was amended, and now when a 504A corporation reincorporates as a 357A district, the 504A corporation ceases to exist upon filing the notice of reincorporation. At that point, the entity is only a 357A district.[7] See Iowa Code § 357A.20(1) & (2) (1992). Thus, the "or chapter 504A" language had meaning under the 1987 version of the code when water providers could have dual status. The amendment to the statute rendered this language unuseable and the Iowa legislature failed to strike the surplus words.

_____

[7]The district court noted that the reincorporated entity continues to operate under all the 504A rules until its first annual meeting, and it is the districts in the transition process to which the statute applies. See RWS #1 I, 967 F. Supp. at 1532-33. We disagree. Although the district may continue to operate under the bylaws and articles of incorporation of the 504A corporation, it is no longer a 504A corporation once it is reincorporated.

Finally, any "[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory." Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow, 191 F.3d 1192, 1197 (10th Cir. 1999) (citations omitted). Congress enacted section 1926(b) to encourage rural water development and to provide greater security for FmHA loans. See id. at 1196. Therefore, our holding is supported by the policy underlying the federal statute.

**B.    The Customer Trade**

Sioux Center also appeals the determination that the customer trade violated the statute. As previously noted, section 1926(b) prohibits a city from curtailing or limiting the area served by a rural water association in debt to the government. Additionally, 7 CFR § 1942.17(n)(2)(xii) requires the government's written consent before a "facility" can be sold, leased, transferred or encumbered. The parties agree that the customer traded is not a facility.

RWS #1, however, argues by analogy that the statute and the regulation create a requirement that the government must consent to an exchange of customers or a violation of the statute will result. The district court found that neither the statute nor the regulation directly addressed the issue of customers or a trade of customers. See RWS #1 II, 29 F. Supp. 2d at 990. The court did find, however, "the principles behind § 1926(b) do [prohibit a trade], at least where the FmHA is not a party to the agreement to transfer." Id. at 991. We disagree.

Although the statute was enacted to protect the government's security, the government's security was not impaired by this trade. It was an equal exchange of one customer for another. Therefore, the policy justification utilized by the district court to support its decision fails. Accordingly, we reverse on this issue, and the city can continue to provide water to the traded customer.

**C.    Attorney Fees**

RWS #1 requested $377,516.61 in attorney fees under section 1988. The district court reduced this amount by forty-four percent, to $212,866.61 on the basis of partial success, excess hours, and duplication. We review an attorney fees award under section 1988 for an abuse of discretion. <u>See</u> <u>Harmon v. City of Kansas City</u>, 197 F.3d 321, 329 (8th Cir. 1999). Given the complicated facts of this case, and the district court's well-reasoned decision, we affirm the fee award.

## III.   CONCLUSION

Accordingly, the district court is affirmed in part and reversed in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.