# IN THE SUPREME COURT OF IOWA

No. 20–1027

Submitted April 15, 2021—Filed May 7, 2021

**XENIA RURAL WATER DISTRICT,**

> Appellant,

vs.

**CITY OF JOHNSTON, IOWA,**

> Appellee.

Certified questions of law from the United States District Court for the Southern District of Iowa, James E. Gritzner, United States District Court Senior Judge.

Municipality and rural water district contest Iowa statutory requirements for provision of water service within two miles of city boundary. **CERTIFIED QUESTIONS ANSWERED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Steven M. Harris (argued) and Michael D. Davis of Doyle Harris Davis & Haughey, Tulsa, Oklahoma, and Frank M. Smith of Frank Smith Law Office, Des Moines, for appellant.

William J. Miller (argued) and Manuel A. Cornell of Dorsey & Whitney LLP, Des Moines, for appellee.

Stephen H. Locher (argued) of Belin McCormick, P.C., Des Moines, for amici curiae Association of Regional Water Associations, Iowa Regional Utilities Association, and Iowa Lakes Regional Water.

Amy Beattie (argued) and Allison Steuterman of Brick Gentry Law, PC, West Des Moines, for amicus curiae Iowa League of Cities.

**WATERMAN, Justice.**

An Iowa municipality and a rural water district are litigating competing claims in federal court for the right to provide water service to disputed areas within two miles of the city limits. The city contends that it prevails under the "two-mile rule" codified in Iowa Code section 357A.2 since 1987. The rural water district contends that it prevails under federal statutory protection for rural water service in 7 U.S.C. § 1926(b), the county board resolution defining its territory, an exception to the two-mile rule in section 357A.2(4) added by a 2014 amendment the district argues applies retroactively, and its alleged "dual status" as a chapter 504A nonprofit corporation.

The federal court certified three questions of Iowa law to our court. The city and its amicus curiae urge us to answer each question in the negative; the rural water district and its amici curiae urge us to answer each question in the affirmative. For the reasons explained in this opinion, we answer the certified questions as follows:

> **Question 1:** Whether an Iowa Code § 357A.2 rural water district, before amendments to § 357A.2(4) in 2014, had a legal right to provide water service to portions of an area described in its count[y] board of supervisors resolution, see Iowa Code § 357A.2(1), when those portions were also within two miles of the limits of a municipality, see § 357A.2(3), and when the municipality had not waived its rights to provide water service to the area, see § 357A.2(4).

**Answer: No.**

> **Question 2:** Whether Iowa Code § 357A.2(4), as amended by the Iowa legislature in 2014: (a) exempts a rural water district from following notice-of-intent procedures when the area the district seeks to serve is within the district's boundaries as designated in the county board of supervisors' resolution creating the water district, and/or (b) otherwise provides the rural water district a legal right to serve such areas when the municipality has not waived its rights. If so, whether the 2014 amendment to § 357A.2(4) had retroactive effect.

**Answer: No.**

**Question 3:** Whether an Iowa Code § 504A nonprofit corporation created in 1977 had a legal right to provide water service anywhere within the state of Iowa. If so, whether a § 504A nonprofit corporation that reincorporated (including through articles of dissolution for the § 504A entity) as a § 357A.2 rural water district in 1990 retained the legal right to provide water service anywhere within the state of Iowa (including outside its boundaries as specified in its county board of supervisors resolution and within two miles of a municipality), prior to and following the 1991 amendment to § 357A.2.

**Answer: No, and upon reincorporating under chapter 357A, the rural water district's territorial rights are governed by that chapter, including its two-mile rule, and any broader territorial rights under chapter 504A were abandoned.**

In summary, we construe Iowa Code section 357A.2 since 1987 as granting cities the primary right to provide water service in areas within two miles of the city limits that were not already being served by a rural water district. A rural water district that seeks to extend service to a new tract within two miles of the city limits must first request the city's approval. The two-mile rule was enacted to allow cities room to grow and also to resolve turf battles like this between cities and rural water districts. We harmonize the Iowa statute with federal law, which acts as a shield protecting a rural water district's existing customers, not as a sword to strike down the state's two-mile rule for new infrastructure. The county board resolution by its terms is subject to chapter 357A and in any event yields to state law. The 2014 amendment to section 357A.2(4) only applies when a rural water district adds new customers to or improves existing facilities in its existing service area or pursuant to an existing agreement. The two-mile rule is not avoided by any "dual status" for a 504A[1] nonprofit corporation that reorganizes under chapter 357A.

---

[1]In July 2005, chapter 504A was repealed. *See* 2004 Iowa Acts ch. 1049, § 190. Its provisions merged into the Revised Iowa Nonprofit Corporation Act. *See* 2004 Iowa Acts ch. 1049 (codified at Iowa Code ch. 504 (2005)).

## I. Background Facts and Proceedings.

"When we answer a certified question, we rely upon the facts provided with the certified question." *Baldwin v. City of Estherville*, 915 N.W.2d 259, 261 (Iowa 2018). We summarize those facts as follows.

The City of Johnston (Johnston) is an Iowa municipality that operates its own water supply system. Xenia Rural Water District (Xenia) is a rural water provider operating in Polk County, Iowa, among other locations. In 1977, Xenia incorporated under Iowa Code chapter 504A as a nonprofit corporation entitled "Xenia Rural Water Association." On May 18, 1982, Xenia borrowed $3.2 million from the United States Department of Agriculture (USDA). On October 30, 1990, Xenia petitioned the Polk County Board of Supervisors (PCBOS) to convert to a rural water district under Iowa Code chapter 357A; the PCBOS granted its petition in a November 27, 1990 resolution, which stated, in part:

> BE IT FURTHER RESOLVED that it is the order of the Polk County Board of Supervisors that the district whose boundary includes the area in Polk County described as follows be and hereby is established as the Xenia Rural Water District with all of the rights, powers and duties specified in Chapter 357A of the code of Iowa, as amended:
>
> > All of the following sections in Polk County except that portion lying within the boundary of any incorporated city on the date hereof:
> >
> > (1) The North 1/2 of Sections 1, 2, and 3, all of Sections 4 through 9, Sections 16 through 20, and Sections 29, 30, 31, 32, and that part of Section 33 west of Saylorville Lake all in Township 81 North Range 25 West.
> >
> > (2) All of that part of Sections in Township 80 North Range 25 West lying westerly of Saylorville Lake.

In April of 1991, Xenia's board signed articles of dissolution for the nonprofit entity, which transferred its assets to the chapter 357A entity.

The articles of dissolution of the 504A entity were filed with the Iowa Secretary of State.

There are two sets of service areas subject to the pending suit, which Xenia refers to as the "Encroachment Areas" and the "Disputed Area," or collectively, "the areas in dispute." The parties agree that the areas in dispute are within the boundaries described in the PCBOS resolution. Some portions of the areas in dispute are within two miles of Johnston's city limits. According to Johnston, "most of the area within the 'Disputed Area' remains undeveloped or relies on well water." The Disputed Area contains approximately 1900 acres, including approximately 550 acres annexed by Johnston in 2018 and another portion of approximately 1350 acres that Johnston intends to annex, which it describes as "primarily undeveloped rural acreage." Johnston has provided water service to portions of the Encroachment Areas since at least 1995 and continues to do so. Xenia has no pipes in the ground or customers it already serves within the areas in dispute.

In early 2018, Xenia and Johnston began negotiating over which entity would provide water services requested by the United States Navy for a facility it was building in the Disputed Area. The negotiations led to an April 4, 2018 Interim Agreement that stated, in relevant part, "Section 357A.2 of the [Iowa] Code provides that Xenia may not provide services within two miles of the limits of Johnston unless Johnston has approved a new water system plan." The agreement was signed by the Mayor and City Clerk of Johnston and the Chair and Secretary of Xenia. The area Johnston intended to annex included sections both within and beyond two miles from the city limits. In September 2018, negotiations broke down after Johnston offered approximately $1.58 million to Xenia for its rights to areas over two miles from the city limits.

On November 3, Xenia filed a three-count Complaint against Johnston in the United States District Court for the Southern District of Iowa. On January 4, 2019, Xenia filed a five-count First Amended Complaint. Count One alleges that Johnston violated 42 U.S.C. § 1983 by depriving Xenia of its rights under 7 U.S.C. § 1926(b), which protects certain entities indebted to the USDA from municipal encroachment. Count Two seeks a declaratory judgment as to Xenia's legal rights to serve the areas in dispute. Count Three requests that the court enjoin Johnston from violating section 1926(b). Count Four requests that the court create a constructive trust conveyed to Xenia for Johnston's water infrastructure in the areas in dispute. Count Five requests money damages. In its January 18 Answer to the Amended Complaint, Johnston asserted nine affirmative defenses as well as a two-count counterclaim seeking a declaratory judgment as to the legal rights between Xenia and Johnston and an injunction against Xenia.

On June 12, Xenia moved for partial summary judgment on grounds that federal law preempted any conflicting provisions in Iowa Code section 357A.2. On July 18, Johnston moved for partial summary judgment on that preemption claim. On January 8, 2020, Xenia filed a second motion for summary judgment on other issues. The court held a hearing on the first two motions on February 11. In a March 19 order, the court granted partial summary judgment for Xenia as to areas in dispute beyond two miles from Johnston's city limits. The court granted Johnston's motion for partial summary judgment and denied in part Xenia's first motion for partial summary judgment as to areas within two miles of Johnston's city limits. The ruling was based in significant part on Iowa Code section 357A.2's two-mile rule.

Xenia filed an interlocutory appeal, which the United States Court of Appeals for the Eighth Circuit dismissed for lack of jurisdiction. Xenia then filed a Motion for Reconsideration, challenging the court's interpretation of Iowa law in the summary judgment order. Xenia argues that when it reorganized into a rural water district from a nonprofit corporation, it retained the legal rights it possessed as a nonprofit to provide water service anywhere within the state of Iowa (that is, it has dual status as a rural water district and a nonprofit corporation, and it has the legal rights available to both entities). Xenia also argues the 2014 amendment to section 357A.2(4) "clarified that the Two-Mile Rule was never intended to preclude a district from extending service within its existing boundaries/service area, which under Iowa law, is established by the County Board of Supervisors."

The court noted the absence of state-court authority interpreting Iowa Code section 357A.2. The court granted leave to amici curiae to file a brief in support of Xenia's position. Amici curiae contend that the court's resolution of novel questions of Iowa state law "will have far-reaching effects" for rural water service throughout Iowa. Both Xenia and Johnston as well as Xenia's amici curiae agreed the court should certify questions to our court.[2] On August 4, 2020, the court entered an order certifying the three questions of state law to our court.

**II. Our Discretion to Answer Certified Questions.**

"Iowa Code section 684A.1 allows this court to answer questions of Iowa law certified to us by a federal court that concludes controlling precedent is lacking when the answer may be determinative of the federal proceeding." *Bd. of Water Works Trs. of the City of Des Moines v. SAC Cnty.*

---

[2]The Iowa League of Cities had not filed an amicus brief in the certifying court.

*Bd. of Supervisors*, 890 N.W.2d 50, 56 (Iowa 2017) (quoting *Oyens Feed &*

*Supply, Inc. v. Primebank*, 808 N.W.2d 186, 188 (Iowa 2011)).

> In *Foley* [*v. Argosy Gaming Co.*], we noted our discretion to answer certified questions that (1) were certified by a proper court, (2) presented questions of Iowa law, (3) "may be determinative of the cause . . . pending in the certifying court," and (4) appeared to the certifying court to have no controlling Iowa precedent.

*Id.* (quoting *Foley*, 688 N.W.2d 244, 246 (Iowa 2004)).

All four requirements are met here. The federal court certified three questions of Iowa law that have no controlling Iowa precedent. The answers to the certified questions may be determinative of the competing claims in the federal court litigation over the rights to serve the areas in dispute within two miles of Johnston's city limits. More broadly, the Iowa League of Cities advises that our decision on the certified questions "will directly and immediately affect development and projects now being discussed or constructed . . . by many of the cities in this State [and] will immediately affect [their] annexation decisions . . . ." Conversely, Xenia's amici caution that "the economic viability of the rural water utilities . . . are threatened when cities encroach on the utilities' service areas." We elect to answer the certified questions.

**III. Analysis.**

We address the certified questions mindful of federal statutory protections for rural water districts, which both sides and their amici have briefed to our court. *See Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 886 N.W.2d 601, 611–12 (Iowa 2016) (interpreting Iowa statute to avoid conflict with federal law).

> Under the Consolidated Farm and Rural Development Act, the USDA is 'authorized to make or insure loans' to rural water and sewer utilities for the "conservation, development, use, and control of water . . . primarily serving farmers,

ranchers, farm tenants, farm laborers, rural businesses, and other rural residents."

*Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 475 (5th Cir. 2020) (en banc) (quoting 7 U.S.C. § 1926(a)(1)).

"To ensure that federally indebted utilities repay their loans, Congress enacted a provision protecting utilities from curtailment and encroachment by municipalities and other public bodies." *Id.* Specifically, "Congress enacted section 1926(b) to encourage rural water development and to provide greater security for [federal] loans." *Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 202 F.3d 1035, 1038 (8th Cir. 2000). That statute states:

> *The service provided or made available through any such association shall not be curtailed or limited* by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b) (emphasis added). Federal appellate courts recognize this provision protects the rural water district's existing facilities already providing service to customers:

> The statute's use of phrases like 'curtailed' and 'limited' to describe the municipality's interference with the rural water association suggests that a rural water association must already be providing service to an area before the protections of § 1926(b) apply.

*Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 708 (6th Cir. 2003). "Section 1926(b) provides a shield, not a sword." *Pub. Water Supply Dist. No. 3 of Laclede Cnty. v. City of Lebanon*, 605 F.3d 511, 519 (8th Cir. 2010). Courts have rejected "a rural water district's attempt to use § 1926(b) to become the exclusive service provider for a new development that it had

not previously served." *Id.* at 518. That is, rural water districts may use the statute defensively—"to protect their exclusive right to serve their existing customer base during the time of the qualifying federal loan, thereby ensuring the continued security of the loan"—but not offensively to move into new territory. *Id.* at 517–19. "[A]ny '[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the [USDA]-indebted party seeking protection for its territory.'" *Id.* at 515 (second alteration in original) (quoting *Rural Water Sys. No. 1*, 202 F.3d at 1038).

"To qualify for protection, an entity must: (1) be an 'association' under the statute, (2) have a qualifying federal loan, and (3) have provided or made service available to the disputed area." *Id.* at 521. "Making service available has two components: (1) the physical ability to serve an area; and (2) the legal right to serve an area." *Id.* (quoting *Rural Water Sys. No. 1*, 202 F.3d at 1037). To determine a physical ability to serve, courts use the "pipes in the ground" test, which asks "whether a water association 'has adequate facilities within or adjacent to the area to provide service to the area within a reasonable amount of time after a request for service is made.'" *Id.* at 523 (quoting *Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow,* 191 F.3d 1192, 1202 (10th Cir. 1999)). "A utility cannot satisfy that test if it has no nearby infrastructure. But 'pipes in the ground' is a colloquial shorthand, not a strict requirement." *Green Valley Special Util. Dist.,* 969 F.3d at 477.

To determine whether the rural water district has a legal right to serve an area, courts refer to state law. *Rural Water Sys. No. 1 v. City of Sioux Ctr.,* 967 F. Supp. 1483, 1525 (N.D. Iowa 1997), *aff'd,* 202 F.3d 1035 (8th Cir. 2000). The association's "protected service area is defined by state law as of the date" when the federal debt is assumed. *Id.* at 1530.

Against this backdrop, we address the certified questions.

**Question 1: Whether an Iowa Code § 357A.2 rural water district, before amendments to § 357A.2(4) in 2014, had a legal right to provide water service to portions of an area described in its count[y] board of supervisors resolution,** *see* **Iowa Code § 357A.2(1), when those portions were also within two miles of the limits of a municipality, § 357A.2(3), and when the municipality had not waived its rights to provide water service to the area,** *see* **§ 357A.2(4).**

Xenia argues an affirmative answer to the first question is required by the 1990 resolution of the PCBOS. That resolution created the "Xenia Rural Water District with all of the rights, powers and duties specified in Chapter 357A of the code of Iowa, as amended." Johnston argues the two-mile rule codified in section 357A.2 since 1987 compels us to answer "no" to this question. We agree with Johnston.

We begin with the statutory text. The Iowa legislature enacted the two-mile rule in 1987 by adding a new paragraph to Iowa Code section 357A.2. 1987 Iowa Acts ch. 109, § 2 (codified at Iowa Code § 357A.2 (1987 Supp.)). The new paragraph stated:

> Water services, other than water services provided as of April 1, 1987, *shall not be provided within two miles of the limits of a city* by a rural water district incorporated under this chapter or chapter 504A unless the city has approved a new water service plan submitted by the district. If the new water service plan is not approved by the city, the plan may be subject to arbitration.

Iowa Code § 357A.2 (1987 Supp.) (emphasis added). Section 357A.2 was amended again in 1992 to delete the arbitration provision and add notice-of-intent procedures for a rural water district. 92 Iowa Acts ch. 1015, §§ 3, 4 (codified at Iowa Code § 357A.2 (1993)). As amended, the sections reads:

> Water services, other than water services provided as of April 1, 1987, *shall not be provided within two miles of the limits of a city by a rural water district incorporated under this chapter or chapter 504A except as provided in this section.*

A rural water district incorporated under this chapter or chapter 504A may give notice of intent to provide water service to a new area within two miles of a city by submitting a water plan to the city. . . . In responding to the plan, the city may waive its right to provide water service within the areas designated for service by the rural water district, or *the city may reserve the right to provide water service in some or all of the areas which the rural water district intends to serve.* If the city reserves the right to provide water service within some or all of the areas which the rural water district intends to serve, the city shall provide service within four years of receipt of the plan. This section does not preclude a city from providing water service in an area which is annexed by the city.

Iowa Code § 357A.2 (1993) (emphasis added).

Under the plain meaning of section 357A.2, cities retained the right to provide new water services to unserved areas within two miles of the city limits. Rural water districts could provide service to new areas within two miles of the city limits only upon the city's approval (waiver) or if the city failed to provide service within four years of the district's notice of intent. There were no further substantive amendments to section 357A.2 before 2014.

Iowa Code section 357A.2 authorizes county supervisors to incorporate and organize rural water districts

encompassing an area, not then included in any other district, in any county or any two or more adjacent counties for the purpose of providing an adequate supply of water for domestic purposes to residents of the area who are not served by the water mains of any city water system . . . .

Iowa Code § 357A.2 (1987 Supp.). The rural water district's "area" of operation is subject to the two-mile rule, which has been included within section 357A.2 since 1987. *Compare id., with id.* § 357A.2(3) (2021).

Xenia and its amici argue the 1990 PCBOS resolution defines Xenia's service territory and only excludes land *within* city limits, thereby allowing Xenia to serve areas outside the city but within two miles of the

municipal boundary.[3]  In our view, this argument fails for two reasons. First, the 1990 PCBOS resolution expressly provides that Xenia is subject to the "duties specified in Chapter 357A" that include the two-mile rule. Indeed, as the certifying court observed in its summary judgment ruling,

> [T]here is no conflict between the resolution and state law because the resolution explicitly indicates that Xenia is established "with all of the rights, powers and *duties* specified in Chapter 357A." One of those duties was the obligation not to provide water service within two miles of a city's limits without receiving the city's permission. Xenia's boundaries within Polk County are not set in stone by the geographic description in the resolution but are instead subject to the caveat of the two-mile rule.

(Citation omitted.)

Second, a county's home rule powers may not conflict with a state statute. Iowa Const. art. III, § 39A ("Counties . . . are granted home rule power and authority, not inconsistent with the laws of the general assembly . . . ."). Nothing in chapter 357A authorizes counties to override the two-mile rule. Conflicting language in a county ordinance or resolution must yield to the controlling state statute. *Worth Cnty. Friends of Agric. v. Worth Cnty.*, 688 N.W.2d 257, 262–64 (Iowa 2004) (holding statute preempted conflicting county ordinance regulating livestock confinement operations). As the certifying court aptly observed in its summary judgment ruling:

> Read together, the provisions of Iowa Code § 357A.2 plainly indicate that a rural water district's permitted service area, as specified by its county supervisors' resolution, is subject to the two-mile rule. The two-mile rule's placement in the statute immediately after the provisions permitting petitions for the creation of rural water districts shows that

---

[3]It makes sense that the resolution specifically excludes land within a city, where the rural water district cannot provide service, without separately mentioning land outside the city but within two miles of the city limits. Rural water districts may provide service within that two-mile zone with the city's consent or if the city itself fails to provide service within the statutory deadline after the district's notice of intent.

the two-mile rule is meant to restrict the potential scope of rural water district service areas. If a rural water district's boundaries specified in a resolution trumped the two-mile rule, then the two-mile rule would be superfluous—its only function is to limit districts' rights to provide water service within two miles of a city's limits.[4]

We agree, and we reject Xenia's interpretation that would render the two-mile rule superfluous.

We also reject Xenia's contention in its briefing to our court that Johnston's interpretation of the two-mile rule in section 357A.2 would be preempted by 7 U.S.C. § 1926(b). A water district's legal right to serve a new development is determined by state law. *Rural Water Sys. No. 1*, 967 F. Supp. at 1525. Xenia had no pipes in the ground, existing facilities, or customers it was already serving within two miles of Johnston's city limits before the two-mile rule went into effect in 1987—and still does not as of today. As we discuss above, section 1926(b) operates as a shield to protect a rural water district's existing customer base, not as a sword to strike down a state statutory obstacle to legally serve a new area. *See Pub. Water Supply Dist. No. 3 of Laclede Cnty.*, 605 F.3d at 517–19. In our view, the certifying court correctly rejected Xenia's preemption argument in its ruling granting Johnston's motion for partial summary judgment:

> In sum, Xenia's protected service area as of 1982 was not defined by the two-mile rule because the two-mile rule explicitly exempts water services provided before 1987 and the two-mile rule did not begin to apply to Xenia until 1990, but that protected service area does not cover the areas in dispute. Any expansion of Xenia's protected service area from loans taken out in 1992 or later is defined by the two-mile rule, but § 1926(b) does not preempt the two-mile rule in such situations because § 1926(b) necessarily looks to state law to prospectively define a rural water provider's service area at the time the provider assumes a qualifying loan. As applied to the

---

[4]This discussion related to section 357A.2 as amended in 2014; but the statute in 1990 also included the two-mile rule immediately after the general grant of authority to the board of supervisors.

facts of this case, § 357A.2 does not conflict with § 1926(b), and federal law therefore does not preempt the two-mile rule.

We agree with the foregoing legal conclusion. Xenia's interpretation would rewrite section 357A.2 to eliminate the two-mile rule. We decline to do so.

Finally, we are not persuaded by Xenia's "dual status" or retroactivity arguments, which we address below. We answer "no" to Question 1.

**Question 2: Whether Iowa Code § 357A.2(4), as amended by the Iowa legislature in 2014: (a) exempts a rural water district from following notice-of-intent procedures when the area the district seeks to serve is within the district's boundaries as designated in the county board of supervisors' resolution creating the water district, and/or (b) otherwise provides the rural water district a legal right to serve such areas when the municipality has not waived its rights. If so, whether the 2014 amendment to § 357A.2(4) had retroactive effect.**

We begin our analysis with the text of the amendment. In 2014, the Iowa legislature amended sections 357A.2(3) and (4). 2014 Iowa Acts ch. 1086, § 2 (codified at Iowa Code § 357A.2(3)–(4)(*a*) (2015)). As amended, the statute provides, in relevant part and with amended portions italicized, the following:

> 3. Water services, other than water services provided as of April 1, 1987, shall not be provided within two miles of the limits of a city by a rural water district incorporated under this chapter except as provided in this section. *Except as otherwise provided in this chapter, a rural water association shall not provide water services within two miles of a city, other than water services provided as of July 1, 2014.*

> 4. *a.* A rural water district *or rural water association* may give notice of intent to provide water service to a new area within two miles of a city by submitting a water plan to the city. *This subsection shall not apply in the case of a district or association extending service to new customers or improving existing facilities within existing district or association service areas or existing district or association agreements. If water service is provided by a city utility established under chapter 388, the water plan shall be filed with the governing body of that city utility. The district or association shall provide written notice pursuant to this subsection by certified mail.*

Iowa Code § 357A.2(3)–(4)(*a*) (2015) (emphasis added). The other amended subsections contain the specific notice-of-intent procedures. *See id.* § 357A.2(4)(*b*)–(*d*) (describing specific procedures by which the rural water district submits a water plan to the city and the city can waive or reserve its rights).

Xenia, again relying on the PCBOS resolution, contends its "existing district or association service areas" within the meaning of the 2014 amendment include the areas in dispute within two miles of Johnston's city limits. Xenia thereby argues that it avoids the two-mile rule and that the 2014 amendment applies retroactively. Johnston argues the new exception is inapplicable in this case because Xenia's "existing service area" omits land within two miles of the city limits and further argues the amendment applies only prospectively. In our view, Johnston prevails.

As we determined above, Xenia's territorial rights under the 1990 PCBOS resolution are subject to the two-mile rule in section 357A.2(3). The two-mile rule remains in the statute as amended in 2014. The new exception to notice requirements in subsection 4 applies when a rural water district adds new customers to or improves existing facilities in its existing service area or pursuant to an existing agreement. Xenia has no customers it is already serving or pipes in the ground (existing facilities) in the areas in dispute and lacks an existing agreement to serve those areas.

The legislature did not define "existing service area." *See* Iowa Code § 357A.1 (defining other terms, but not "existing service area" or "service area"). "We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law." *Doe v. Iowa Dep't of Hum. Servs.*, 786

N.W.2d 853, 858 (Iowa 2010). We agree with the certifying court's interpretation:

> The ordinary meaning of extending service and improving existing facilities within existing service areas suggests that the amended language does not contemplate a rural water district expanding its provision of water service to areas which it previously did not serve.

Our interpretation of the 2014 statutory exception for existing service areas is congruent with federal protection for existing operations under 7 U.S.C. § 1926(b), as explained above.

We also consider the context in which this phrase is used, including neighboring sections, to determine meaning. *Doe*, 786 N.W.2d at 858 ("When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases."). The amended language at issue is in subsection 4, not in subsection 3. Thus, subsection 4(*a*) does not provide an exception for rural water districts to avoid the two-mile rule as set out in subsection 3 but only to avoid (in certain circumstances) the notice-of-intent procedures in subsection 4.[5] As the certifying court noted, "The Iowa legislature did not intend to abrogate subsection 3's two-mile rule by placing the relevant amended language in the middle of the *next* subsection in the statute."

We construe statutes to avoid rendering part of the text superfluous. *See Doe*, 786 N.W.2d at 858. Under Xenia's proposed interpretation, as the certifying court correctly concluded, "the two-mile rule would not apply

---

[5]The exception to the notice requirement in subsection 4(*a*) would come into play when a rural water district is already serving customers within two miles of the city limits by agreement of the city, by default after the city failed to extend service to the area within the statutory deadline, or through facilities installed before 1987 and therefore exempt from the two-mile rule. As the League of Cities argues, "[The new exception applies] to 'existing,' not new, water services and infrastructure. No notice is needed if a district or association has pipes and infrastructure in the ground and wants to improve that infrastructure or wants to connect new customers to already existing infrastructure and pipelines."

within a rural water district's boundaries as established by its county supervisors' resolution . . . [and] it is unclear when the two-mile rule would ever apply." We reject Xenia's interpretation that would render the two-mile rule in section 357A.2(3) superfluous. And as we explain under Question 3, Xenia's "dual status" territorial argument fails to override the two-mile rule.

We find no support for Xenia's interpretation in the legislative history of the 2014 amendment. *Doe*, 786 N.W.2d at 858 ("We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent."). The Iowa League of Cities notes that it and the Iowa Association of Municipal Utilities supported the amendment, and it credibly argues both organizations would have opposed any change to section 357A.2 that eliminated the two-mile rule. The explanation accompanying the 2014 amendment simply reads: "The Act also provides standards and procedures governing the rights of cities and rural water districts or associations to provide water service within areas designated within a water plan." Iowa Gen. Assemb., 2014 Summary of Legislation 141 (2014), https://www.legis.iowa.gov/docs/publications/SOL/401833.pdf#HF2192 [https://perma.cc/9F8U-4WJQ]. If the amendment actually eliminated the two-mile rule, the accompanying bill explanation surely would have said so.[6] It did not.

The 2014 amendment retains the primary right of cities to control water service within two miles of their boundaries, thereby allowing room for cities to expand. Rural water districts and municipalities can negotiate which entity will provide service for new developments under the

---

[6]*See Star Equip., Ltd. v. Iowa Dep't of Transp.*, 843 N.W.2d 446, 454 n.3 (Iowa 2014) (discussing legislative rules and the Iowa Bill Drafting Guide and Style Manual requiring bill explanations to be "concise and accurate").

procedures set forth in Iowa Code section 357A.2(4). Indeed, that is what happened with these parties in 2018—they negotiated an agreement regarding extending water service to a new naval facility. Xenia contractually agreed that year that it was subject to the two-mile rule.[7]

Elimination of the two-mile rule would undermine the legal certainty necessary to promote municipal investments in costly infrastructure (pipes in the ground, water towers, pumping stations, and the like). Xenia, in Count 4 of its Amended Complaint, asks the federal court to impose a constructive trust in favor of Xenia to take over Johnston's existing infrastructure already serving customers in the areas in dispute. The Eighth Circuit rejected a similar attempt and warned that if a rural water district is allowed to "capture customers" already served by the municipality,

> cities would not be willing to invest in the necessary infrastructure to serve customers within a rural district's boundaries because such investments would be rendered worthless by a rural water district that obtains a qualifying federal loan. Creating such a disincentive would undermine the purpose of encouraging rural utility development.

*Pub. Water Supply Dist. No. 3 of Laclede Cnty.*, 605 F.3d at 518. The same is true here. Based on our interpretation of the 2014 amendment, we answer "no" to the first sentence of Question 2, and therefore we need not answer the second sentence.

**Question 3: Whether an Iowa Code § 504A nonprofit corporation created in 1977 had a legal right to provide water service anywhere within the state of Iowa. If so, whether a § 504A nonprofit corporation that reincorporated (including through articles of dissolution for the § 504A entity) as a § 357A.2 rural water district in 1990 retained the legal right to provide water service anywhere within the state of Iowa (including outside its boundaries as specified**

---

[7]Xenia in this litigation contends it misread section 357A.2 in 2018 to mistakenly conclude the two-mile rule applied to it. In our view, Xenia's 2018 conclusion was correct and its current position is mistaken.

**in its county board of supervisors resolution and within two miles of a municipality), prior to and following the 1991 amendment to § 357A.2.**

We now confront Xenia's "dual status" argument. Xenia was originally incorporated in 1977 as a nonprofit corporation under Iowa Code chapter 504A, and it was reincorporated in 1990 under Iowa Code chapter 357A. Xenia contends that as a chapter 504A entity, it could operate anywhere in the state of Iowa and that after its reorganization under chapter 357A, it retained a dual status with a continuing power to operate anywhere in Iowa, including within two miles of Johnston's city limits. Xenia's dual status argument fails for several reasons.

First, the argument rests on a flawed premise—that Xenia could put pipes in the ground and serve water customers anywhere in Iowa as a chapter 504A corporation. Xenia's interpretation would contradict the statutory rights of other entities. *See, e.g.*, Iowa Code § 357.28 (1977) (requiring consent of trustees of beneficial water district to construct additional water mains within its territory). Moreover, under section 357A.2, the 504A corporation would be subject to the two-mile rule. *See* Iowa Code § 357A.2 (1987 Supp.); *see also Rural Water Sys. No. 1*, 202 F.3d at 1038 ("It is likely that section 357A.2 applied to these corporations having dual status.").

In any event, Xenia's rights under chapter 504A were extinguished when it reorganized under chapter 357A. *See* Iowa Code § 357A.20(1)–(2) (1991 Supp.) (providing that upon filing a notice of dissolution with the secretary of state, "the nonprofit corporation shall cease to exist as a chapter 504A entity and all assets and liabilities of the nonprofit corporation become the assets and liabilities of the newly organized district without a need for any further meetings, voting, notice to creditors, or other actions by the

members or board");[8] *see also Rural Water Sys. No. 1*, 202 F.3d at 1038 n.7 ("Although the district may continue to operate under the bylaws and articles of incorporation of the 504A corporation, it is no longer a 504A corporation once it is reincorporated [under section 357A.2]."). Xenia's board signed articles of dissolution of the 504A entity in 1991 and filed them with the Iowa Secretary of State. And as noted, the PCBOS resolution that incorporated Xenia under section 357A.2 expressly subjected Xenia to the duties of that chapter, which include the two-mile rule.

We hold that an Iowa Code section 504A nonprofit corporation created in 1977 did not have a legal right to provide water service anywhere within the state of Iowa, and therefore we answer "no" to the first sentence of Question 3. We further hold that any broader territorial rights under chapter 504A were abandoned when the entity dissolves and reincorporates under chapter 357A as a rural water district subject to the two-mile rule. We therefore answer "no" to second sentence of Question 3 as well.

**VI. Conclusion.**

For the reasons explained in this opinion, we answer the three certified questions as set forth above.

**CERTIFIED QUESTIONS ANSWERED.**

All justices concurred except McDermott, J., who takes no part.

---

[8]Xenia and its amici argue Iowa Code section 357A.20(2)(*b*) is inapplicable because that statute was enacted in 1991, after Xenia reorganized, and does not apply retroactively. *See* 1991 Iowa Acts ch. 134, § 17 (codified at Iowa Code § 357A.20 (1991 Supp.)). We decline to interpret the statute to grandfather in and preserve a dual status for a 504A entity that dissolved after reorganizing under section 357A.2. We apply the provision prospectively to defeat the dual status Xenia claims today. As the certifying court ruled, "Even if Xenia had the legal ability to provide water service everywhere in Iowa when it was a nonprofit, Xenia did not retain that right upon reorganization."